HASTINGS & SONS PUBLISHING COMPANY[1] vs. CITY
TREASURER OF LYNN & others
(and a companion case).

Essex. December 5, 1977. — April 18, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Public Record. Police. Municipal Corporations,* Public record, Police.
*Privacy.*

Payroll records of municipal employees, including records of disburse-
ments to police for off-duty work details, were public records within
the meaning of G. L. c. 66, § 10. [815-817]
Payroll records of municipal employees, including records of disburse-
ments to police for off-duty work details, were not exempt from
disclosure as public records by the provisions of G. L. c. 4, § 7,
Twenty-sixth (c) [817-818]; nor would disclosure of such records con-
stitute an infringement of the right to privacy under G. L. c. 214, §
1B, or under the United States Constitution [818-820].

TWO CIVIL ACTIONS commenced in the Superior Court on
May 12, 1975, and March 31, 1976, respectively.

A motion to revoke a preliminary injunction in the first
case and for judgment on the pleadings in the second was
heard by *Ronan, J.*

*Henry Wise* for the defendants.

*Charles E. Schaub, Jr. (Nicholas G. Curuby* with him)
for the plaintiff.

*Francis X. Bellotti,* Attorney General, amicus curiae, &
*Jonathan Brant,* Assistant Attorney General, submitted a
brief.

LIACOS, J. The defendant members of the Lynn police
department bring this appeal from a judgment in the
Superior Court ordering the defendant treasurer of the city

---

[1] The Attorney General has filed an amicus curiae brief on behalf of the
plaintiff.

of Lynn (treasurer) to allow the plaintiff access to city payroll records for the year 1975. The Lynn policemen also appeal an order revoking a preliminary injunction which prohibited the disclosure of the financial records of members of the Lynn police department.[2] We affirm the order and the judgment on the ground that payroll records of municipal employees, including records of disbursements to police for off-duty work details, are subject to disclosure under G. L. c. 66, § 10.

On January 6, 1976, the plaintiff formally requested the treasurer of Lynn to disclose the "[b]ase salaries and overtime payments for the calendar year 1975 of any and all categories of employees of the City of Lynn, including employees of the School Department." The information the plaintiff sought can be found in the municipal employee payroll records, prepared and maintained by the treasurer. The treasurer also keeps records of the monies received by the city for work performed by municipal employees on off-duty work details or on special detail work. See G. L. c. 44, § 53C.[3] These financial statements contain the name, ad-

---

[2] The injunction was issued in the case of Warren A. Briggs & others vs. Mayor of Lynn & others, Superior Court, Essex County, No. 2440 (1975). The other defendants are the treasurer, the chief of police of the city of Lynn, and the city of Lynn. While an appeal from an interlocutory order ordinarily must conform to the procedures set out in *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.*, 367 Mass. 464 (1975), and *Rollins Environmental Servs., Inc.* v. *Superior Court*, 368 Mass. 174 (1975), we will review the interlocutory order revoking the preliminary injunction since it is integrally related to the final judgment in Hastings & Sons Publishing Company *vs.* City Treasurer of Lynn & others, Superior Court, Essex County, No. 5024 (1976).

[3] General Laws c. 44,§ 53C, as amended through St. 1976, c. 24, provides in part: "All money received by a city, town or district as compensation for work performed by one of its employees on an off-duty work detail which is related to the employee's regular employment or for special detail work performed by persons where such detail is not related to regular employment shall be deposited in the treasury and shall be kept in a fund separate from all other monies of such city, town or district and notwithstanding the provisions of section fifty-three, shall be expended without further appropriation, in such manner and at such times as shall, in the discretion of the authority authorizing such off-duty work detail or special detail work, compensate the employee or person for such services."

dress, base pay, overtime pay, miscellaneous payments, and gross pay of every municipal employee in Lynn.

When the treasurer refused to comply with the request for access to these records, the plaintiff initiated this suit by filing a complaint in the Superior Court pursuant to G. L. c. 66, § 10. Thereafter, the plaintiff and the treasurer executed a stipulation of facts, and the plaintiff moved for judgment on the pleadings and the stipulation. See Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974). The stipulation stated that the treasurer refused to furnish the requested records to the plaintiff due to an outstanding preliminary injunction prohibiting him from disclosing the payroll records of members of the Lynn police department. Members of the Lynn police force, "on behalf of themselves and on behalf of all other police officer[s]" of Lynn, had obtained this injunction in their action against certain municipal officers of Lynn. The stipulation provided that on dissolution of such injunction the treasurer would comply with the plaintiff's demand for access to the city payroll records.

Since members of the Lynn police department claimed an interest relating to the subject matter of the action brought by the plaintiff, the trial judge joined the police as parties defendant in the instant case for the limited purpose of asserting any defense predicated on G. L. c. 214, § 1B (the privacy statute), or on any enforceable right of privacy.[4] See Mass. R. Civ. P. 19, 21, 365 Mass. 765, 767 (1974). See also Mass. R. Civ. P. 22, 365 Mass. 767 (1974). The policemen then filed a memorandum in support of the right to privacy, a pleading entitled "Answer, Counterclaim, and Petition for Declaratory Relief" and an affidavit in support thereof. After oral argument, the judge revoked the preliminary injunction and ordered the treasurer to permit the plaintiff to inspect and examine those records containing base salaries

---

[4] This right to privacy formed the gravamen of the policemen's complaint in *Briggs.* The treasurer sought to consolidate that case with the case at bar because common issues of fact and law existed. However, the police officers, unable to agree with the facts set forth in the stipulation, opposed such consolidation.

and overtime payments for the calendar year 1975 of all categories of employees of Lynn. The policemen appealed to the Appeals Court, and we transferred the case here.

1. *Public records issue.* For many years Massachusetts has, by statute, required public access to various records and documents in the possession of its public officials. The first such statute, passed in 1851, provided for the maintenance of and access to municipal, county and town records. St. 1851, c. 161. See also St. 1897, c. 439. The present form of the public records statute is found in G. L. c. 66, § 10, as appearing in St. 1973, c. 1050, § 3, and provides in part: "Every person having custody of any public records . . . shall, at reasonable times and without unreasonable delay, permit them to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof on payment of a reasonable fee. Every person for whom a search of public records is made shall, at the direction of the person having custody of such records, pay the actual expense of such search."

Prior to 1973, a record was not "public" unless an entry had been made pursuant to a requirement of law, *Town Crier, Inc.* v. *Chief of Police of Weston,* 361 Mass. 682, 687 (1972), or the record had been received or required to be received for filing, *Dunn* v. *Assessors of Sterling,* 361 Mass. 692, 694 (1972); *Lord* v. *Registrar of Motor Vehicles,* 347 Mass. 608, 611 (1964). The 1973 amendment to the statutory definition of public records brings a great many more documents to public view. See *Bougas* v. *Chief of Police of Lexington,* 371 Mass. 59 (1976); *Wolfe* v. *Massachusetts Port Auth.,* 366 Mass. 417, 421 n.3 (1974). This broad definition of public records found in G. L. c. 4, § 7, Twenty-sixth, as amended through St. 1973, c. 1050, § 1, provides, in relevant part: "'Public records' shall mean all . . . financial statements . . . regardless of physical form or characteristics, made or received by any officer or employee

of . . . any political subdivision . . . [of the Common-wealth] . . . [with certain exceptions]."[5]

The intent to expand the disclosure of records in the 1973 amendments is clearly evident in the statute's express provision that the definition of public records, as amended, "shall not be construed to exempt any record which was [previously] a public record." St. 1973, c. 1050, § 6.

In light of these amendments to the Public Records Act favoring disclosure, we are not persuaded by the policemen's argument that municipal payroll records are not public records. They contend that the repeal in 1973 of G. L. c. 66, § 17B (h), which had specifically designated wage and salary records as public records, demonstrates a legislative intent to limit the scope of the statutory definition of "public record." An examination of the legislative history of the Public Records Act reveals the error in the policemen's interpretation of this statute. Section 17B created public access to certain records which did not meet the legal requirement test for public records. *Town Crier, Inc.* v. *Chief of Police of Weston, supra* at 688-689. However, the expansive definition of public records in the 1973 amendment to G. L. c. 4, § 7, eliminated the legal requirement test and added the example of "financial statements" to the various classes of public records. Thus, the need for § 17B (h) to liberalize a restrictive public records definition no longer remained.

The policemen further argue that to treat these records as public records would cause great inconvenience and expense to the city. Putting aside the question whether these parties have standing to raise this issue, we reject this argument. Not only has the treasurer already prepared the municipal payroll records in the desired format, but the plaintiff under G. L. c. 66, § 10 (a), is required to pay the actual

---

[5] In addition, the charter of the city of Lynn, St. 1917, c. 340, § 49, quoted in the stipulation, provides in part: "All administrative boards and officers shall keep a record of their official transactions, which shall be open to public inspection."

expense of the search for the records sought, and the judge so ordered. See *Lord* v. *Registrar of Motor Vehicles, supra* at 612; *Direct-Mail Serv., Inc.* v. *Registrar of Motor Vehicles*, 296 Mass. 353, 357 (1937).

2. *Right of privacy issue.* Within this statutory scheme which favors disclosure, nine limited exemptions shield certain records, which would otherwise be public, from the light of public scrutiny. See G. L. c. 4, § 7, Twenty-sixth (*a*)-(*i*). In order to qualify the records for exemption, however, the custodian of these records must overcome the statutory presumption that the records sought are public.[6] G. L. c. 66, § 10 (*c*). The policemen contend that their payroll records fall within subsection (*c*) of c. 4, § 7, which exempts, inter alia, "data relating to a specifically named individual, the disclosure of which may constitute an invasion of personal privacy."[7]

We agree with the judge's ruling that there was no showing that disclosure of payroll records would constitute an invasion of personal privacy.[8] While we appreciate an employee's desire not to have his or her income publicized, the

---

[6] The policemen contend here that the treasurer abdicated his obligation to defend the police officers' right of privacy. The policemen, however, were joined to this action so they could present this defense, themselves. Their interests were adequately protected. Cf. *Rose* v. *Department of the Air Force*, 495 F.2d 261, 267 (2d Cir. 1974), aff'd 425 U.S. 352 (1976) (none of the parties to the suit truly committed to the interests of the affected cadets).

[7] Without further explanation, the policemen also refer to the applicability of "the exemptions of privacy" listed in G. L. c. 4, § 7, Twenty-sixth (*a*) and (*b*). Their briefs do not establish the relevance of these statutory sections. Cf. *Commonwealth* v. *Baptiste*, 372 Mass. 700, 709-710 (1977).

[8] The Federal courts, in construing the comparable exemption under the Freedom of Information Act (FOIA), inquire whether the materials sought under the Federal act would constitute an invasion of personal privacy and, if so, whether this privacy interest would outweigh the public interest served by disclosure. *Columbia Packing Co.* v. *United States Dept. of Agriculture*, 417 F. Supp. 651, 654 (D. Mass. 1976), aff'd 563 F. 2d 495 (1st Cir. 1977). *Rural Hous. Alliance* v. *United States Dept. of Agriculture*, 498 F.2d 73, 77 (D.C. Cir. 1974). See *Department of the Air Force* v. *Rose*, 425 U.S. 352 (1976). In weighing these interests, these

plaintiff is not seeking disclosure of facts involving "'intimate details' of a 'highly personal' nature." *Getman* v. *NLRB,* 450 F.2d 670, 675 (D.C. Cir. 1971). Cf. *Commonwealth* v. *Wiseman,* 356 Mass. 251, 258 (1969), cert. denied, 398 U.S. 960 (1970); *Frick* v. *Boyd,* 350 Mass. 259, 264 (1966). The names and salaries of municipal employees, including disbursements to policemen for off-duty work details, are not the kind of private facts that the Legislature intended to exempt from mandatory disclosure. See generally W. Prosser, Torts § 117 (4th ed. 1971). Municipal employees have long been subject to restrictions and regulations not affecting private employees. See, e.g., *Boston Police Patrolmen's Ass'n* v. *Boston,* 367 Mass. 368 (1975) (limitations on political activities); *Milton* v. *Civil Serv. Comm'n,* 365 Mass. 368 (1974) (residency requirements); G. L. c. 31 (civil service regulations). Courts in other jurisdictions, also finding no invasion of the privacy rights of municipal workers, have required disclosure of payroll records under similar public record statutes. See *Mans* v. *Lebanon School Bd.,* 112 N.H. 160 (1972); *Moak* v. *Philadelphia Newspapers, Inc.,* 18 Pa. Commw. Ct. 599 (1975). See also *School Directors of Milwaukee* v. *Wisconsin Employment Relations Comm'n,* 42 Wis. 2d 637 (1969).

Even if disclosure of municipal payroll records would bring the right of privacy into play, the paramount right of the public to know what its public servants are paid must prevail. But cf. *Columbia Packing Co.* v. *United States Dept. of Agriculture,* 417 F. Supp. 651, 655 (D. Mass. 1976), aff'd 563 F.2d 495 (1st Cir. 1977) (privacy interest in nondisclosure of personal earnings of Federal meat inspectors

---

courts strike the balance in favor of disclosure. *Getman* v. *NLRB,* 450 F.2d 670, 674 (D.C. Cir. 1971).

Since the 1977 amendment to G. L. c. 4, § 7, Twenty-sixth, the privacy exemption of the Massachusetts public records statute more closely tracks the language of the privacy exemption in the FOIA. Paragraph Twenty-six (c) now proscribes the disclosure of records "which may constitute an *unwarranted* invasion of personal privacy" (emphasis added). St. 1977, c. 691, § 1.

outweighs public interest). Such knowledge could significantly add to the citizen's understanding of the government's operations. General salary schedules, obtainable from publication of the collective bargaining agreement, would not provide the details sought by the plaintiff. See *Mans* v. *Lebanon School Bd.*, *supra* at 164. Contrary to the policemen's argument, the plaintiff need not make a showing of police corruption to justify disclosure of the police payroll records. See *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 64 (1976).

Nor does G. L. c. 214, § 1B, give any further support to the policemen's privacy argument.[9] Indeed, the general provisions of G. L. c. 214, § 1B, provide even less support to the policemen's argument than is afforded by the more specific language of G. L. c. 4, § 7, Twenty-sixth (*c*). Without delineating the precise scope of the right to privacy afforded by G. L. c. 214, § 1B, we can state with confidence that disclosure of these payroll records would not constitute an "unreasonable, substantial or serious interference with [the right of privacy]." Cf. *Broderick* v. *Police Comm'r of Boston*, 368 Mass. 33, 44 (1975), cert. denied, 423 U.S. 1048 (1976) (right of privacy under c. 214, § 1B, may be surrendered by public display).

Similarly, disclosure of these records would not infringe on the individual's constitutionally guarded zone of privacy. This constitutional right to privacy extends only to fundamental personal rights which are "implicit in the concept of ordered liberty." *Roe* v. *Wade*, 410 U.S. 113, 152 (1973), quoting from *Palko* v. *Connecticut*, 302 U.S. 319, 325 (1937). While the right to privacy is also protected by more specific constitutional guaranties, the police have not shown that disclosure is being used to deter the exercise of any par-

---

[9] General Laws c. 214, § 1B, inserted by St. 1974, c. 193, § 1, provides: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

ticular constitutional rights.[10] See *O'Brien* v. *DiGrazia,* 544 F.2d 543, 546 (1st Cir. 1976), cert. denied sub nom. *O'Brien* v. *Jordan,* 431 U.S. 914 (1977). Cf. *NAACP* v. *Alabama,* 357 U.S. 449 (1958) (compelled disclosure of membership lists likely to infringe on members' freedom of association). See also *Fisher* v. *United States,* 425 U.S. 391, 399-400 (1976).

3. *Other issues.* The policemen raise several other issues, all of which lack merit. They contend that the likely publication of their salaries in the plaintiff's newspaper will interfere with the collective bargaining process between the city and the municipal employees. However, they fail to present any argument demonstrating specifically how disclosure would frustrate the collective bargaining process.

The policemen also claim that the judge's failure to regard as undisputed the facts alleged in their pleadings denied them due process of law. The pleadings, however, raised only questions of statutory interpretation and constitutional law in which fact-finding by the judge would not be required. Since we have attempted to review these questions of law, the policemen's due process rights have been protected.

Finally, the policemen complain that the judgment below lacks precision.[11] The judgment requires disclosure of "rec-

---

[10] The policemen also assert that disclosure of these financial statements will violate the confidentiality of tax returns guaranteed by G. L. c. 62, § 58 (repealed, and similar provisions now found in G. L. c. 62C, § 21, inserted by St. 1976, c. 415, § 22). Although the judge ordered disclosure of the municipal employees' payroll records, and not their tax returns, information contained in those payroll records can also be found in tax returns. Nevertheless, we find no conflict between the legislative policies to disclose city payroll records and to protect the confidentiality of tax returns; payroll records and tax returns serve different purposes and reveal different facts about the individual.

[11] The judge ordered that "[the treasurer] shall at all reasonable times and without unreasonable delay permit Hastings and Sons Publishing Co. to inspect and examine those records containing base salaries and overtime payments for the calendar year 1975 of any and all categories of employees of the City of Lynn, such inspection and examination to be under his supervision and shall furnish one copy thereof upon payment of

ords containing base salaries and overtime payments," of all categories of Lynn employees. It is sufficiently clear to indicate that the plaintiff will be entitled to have access to the 1975 payroll records, which include the name, address, base pay, overtime pay, miscellaneous payments, and gross pay of individual municipal employees of Lynn.

In *Hastings & Sons Publishing Company* the judgment is affirmed. In *Briggs* the order revoking the preliminary injunction is affirmed.

*So ordered.*

---

a reasonable fee; Hastings to pay the actual cost of such search upon the direction of the defendant [treasurer]."