**DUNN & THEOBALD, INC. and Connors Printing Company, Inc.**

v.

**Richard S. COHEN, Attorney General.**

Supreme Judicial Court of Maine.

June 13, 1979.

Libhart, Ferris, Dearborn & Willey, by N. Laurence Wiley, Jr. (orally), Brewer, for plaintiffs.

William R. Stokes (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

We are here faced with the question whether under the Maine Freedom of Access Act these plaintiffs have any right to inspect and copy certain investigative records of the Attorney General in the face of the legislative declaration that:

"Notwithstanding any other provision of law, all complaints and investigative records of the Department of the Attorney General shall be and are declared to be confidential." 5 M.R.S.A. § 200–D (1979).

In entering judgment below for the Attorney General, the Superior Court justice answered the question in the negative, and so do we.

In August 1978 [1] plaintiffs, Dunn & Theobald, Inc., and Connors Printing Company,

1. Starting on September 27, 1977, plaintiffs had made earlier requests for inspection and copying of the same investigative records, all of which requests were denied. Plaintiffs, how-

Inc., asked the then Attorney General to permit them to inspect and copy the records of an investigation conducted by a predecessor Attorney General in 1974.[2] Plaintiffs sought access to those investigative records in order to have them available for possible use in a libel action they had commenced against the publisher of the *Bangor Daily News*. The matter published by the *Bangor Daily News* that plaintiffs claim was defamatory of them related to the same events that were the subject of the 1974 investigation.

The Attorney General refused plaintiffs access to the 1974 investigative records on the ground that the legislature has declared them to be confidential in the above-quoted 5 M.R.S.A. § 200–D and that the Freedom of Access Act, 1 M.R.S.A. § 402(3)(A) (1979),[3] defines "public records" for purposes of that Act to exclude such statutorily confidential records. By filing an appropriate action in the Superior Court, plaintiffs took a timely appeal from the Attorney General's denial of the requested inspection and copying. *See* 1 M.R.S.A. § 409(1) (1979). The Superior Court granted the Attorney General's motion to dismiss plaintiffs' action, holding that the plain language of the pertinent statutes supported the Attorney General's position. The Superior Court specifically rejected plaintiffs' arguments that to treat the records of the 1974 investigation as confidential would be to give section 200–D an impermissible retroactive application and that the prior Attorney General who had made the 1974 investigation had waived its confidentiality. Plaintiffs took a timely appeal to the Law Court. Concluding, as we do, that the Superior Court was entirely correct in dismissing plaintiffs' action, we deny the appeal.

Whether plaintiffs are to be permitted to inspect and copy the desired records depends upon what the legislature meant by enacting 5 M.R.S.A. § 200–D, effective April 1, 1976. *See* P.L.1976, ch. 715, § 1. As always, the starting point for finding that legislative intendment must be the language of section 200–D itself:

> "Notwithstanding any other provisions of ·law, all complaints and investigative records of the Department of the Attorney General shall be and are declared to be confidential."

In our view, that language could hardly be more clear. The lawmaking body declared the confidential status of all "investigative records of the Department of the Attorney General." Those particular records of the Attorney General are comprehensively classified to be confidential. The language itself does not suggest or even permit of an interpretation encompassing some of the investigative records then or thereafter in the custody or possession[4] of the Attorney General, but not others.

---

ever, did not appeal to the Superior Court from those earlier denials. In any event, the result of the present appeal would be exactly the same, even if it were from any one of the earlier denials.

2. Plaintiffs' request was based on section 408 of the Maine Freedom of Access Act, 1 M.R.S.A. § 401 *et seq.* (1979), which reads in pertinent part:

"Except as otherwise provided by statute, every person shall have the right to inspect and copy any public record during the regular business hours of the custodian or location of such records; . . . ."

3. Section 402(3) of the Freedom of Access Act provides in part as follows:

"3. Public records. The term 'public records' shall mean any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained, directly or after translation into a form susceptible of visual or aural comprehension, that is in the possession or custody of an agency or public official of this State or any of its political subdivisions and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business, except:

"A. Records that have been designated confidential by statute; . . . .."

4. The class of records referred to by the prepositional clause "of the Department of the Attorney General" is at least as broad as that encompassed by the definition of "public records" in section 402(3) of the Freedom of Access Act, which had been enacted in substantially its present form to be effective about six months

Section 200–D is also a free-standing, affirmative declaration of legislative public policy of the treatment to be accorded any investigative records in the Attorney General's custody or possession at any time on and after April 1, 1976. By its introductory phrase, "[n]otwithstanding any other provision of law," section 200–D imposes, by itself and without more, the legislative classification of confidentiality upon the Attorney General's investigative records. We are thus considering not the meaning of an exception to the Freedom of Access Act, with the consequent applicability of a canon of strict construction of exceptions. Rather we are considering the meaning of remedial legislation enacted independently with respect to a specific subject matter—the confidentiality status of particular records in the Attorney General's office. In order to achieve the evident legislative purposes, we are constrained to apply this remedial legislation broadly in accordance with the fair and ordinary meaning of its language. By enacting section 200–D the legislature plainly meant to facilitate future criminal investigations by the Attorney General, but also by its comprehensive language the legislature meant, we believe, to accord protection against disclosure of continuing sources of information and against unfair injury to the reputations of third persons. Those protections would be achieved only by applying section 200–D to *all* investigative records, including those that were in the custody or possession of the Attorney General on April 1, 1976.

In short, section 200–D did not speak as of its effective date in terms of only subsequent Attorney General investigations. By its language it was concerned with any and all of the Attorney General's investigative records, whenever created, and without limitation it denied public access to all such records.

We do not find persuasive either of the two arguments put forth by plaintiffs that section 200–D does not operate to bar their access to the records of the 1974 investigation. First, they misplace their reliance upon "the long and firmly established principle" that a statute "shall not have retroactive operation unless its terms are so strong, clear, and imperative that no other meaning can be annexed to them," *Langley v. Home Indemnity Co.,* Me., 272 A.2d 740, 746–47 (1971). The Attorney General does not assert a retroactive application of section 200–D. Plaintiffs first sought access to the 1974 investigative records long after section 200–D had, as of April 1, 1976, classified those records confidential. From that day forward the Attorney General was obligated to deny requests to inspect or copy any such records. *Cf. Texas Industrial Accident Board v. Industrial Foundation,* 526 S.W.2d 211 (Tex.Civ.App.1975) (Texas Open Records Act construed to permit inspection of any records within governmental agencies at the time the request is made, even though the records had come into existence prior to the effective date of the Act). Section 200–D speaks to the status of investigative records in the custody or possession of the Attorney General on and after April 1, 1976. Applying the statute to bar plaintiffs' inspection of the 1974 investigative records at any time after April 1, 1976, does not constitute giving it a retrospective effect.

Second, plaintiffs also fail in their contention that the Attorney General who conducted the 1974 investigation waived the confidentiality of the resulting investigative records by reporting his conclusions in a four-page letter to the state senator who had requested the investigation. We have some doubt whether the Attorney General could waive the confidential status of investigative reports in the face of the legislative

---

prior to section 200–D. *See* legislative history of 1 M.R.S.A. § 402(3) in *Moffett v. City of Portland,* Me., 400 A.2d 340, 341 n. 4 (1979). The investigative records in dispute in the case at bar were obviously "prepared for use in connection with the transaction of public or governmental business" by the Attorney Gen-

eral, and the investigative records thus were "of" the Department of the Attorney General both in that sense of having been prepared by it and in the sense of being, at the time of enactment of section 200–D, "in the possession or custody" of the Attorney General.

mandate. In any event, however, a waiver requires the voluntary relinquishment of a known right. The Attorney General's letter made public in July 1974 could not constitute a waiver of statutory confidentiality that did not come into existence until April 1, 1976. Furthermore, the public announcement of the Attorney General's conclusion that no statutory violations or official impropriety had occurred cannot be viewed as manifesting a voluntary decision to allow public access to all the investigative records containing the evidence that provided the basis for that conclusion.

The entry must be:

Appeal denied.

Judgment affirmed.

DELAHANTY, J., did not sit.