James Russell WIGGINS and The
Ellsworth American, Inc.

v.

Reginald McDEVITT.

Supreme Judicial Court of Maine.

Argued Sept. 23, 1983.

Decided March 28, 1984.

Lund, Wilk, Scott & Goodall, Gordon H.S.
Scott (orally), Augusta, for plaintiffs.

Gross, Minsky, Mogul & Singal, P.A.,
George Z. Singal (orally), Edward W. Gould,
Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS,
ROBERTS, VIOLETTE, WATHEN,
GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Plaintiff James Russell Wiggins is the
editor and publisher of a weekly newspaper
owned by plaintiff Ellsworth American, Inc.
Plaintiffs commenced this action pursuant
to the Maine Freedom of Access Act (1
M.R.S.A. § 401 et seq. (1979))[1] seeking an
order requiring the defendant, a deputy
sheriff of Hancock County, to permit plain-
tiffs to inspect records pertaining to fees
received by defendant for serving civil pro-
cess. The Superior Court found as a fact

---

[1] For a review of the legislative history of the act *see Moffett v. City of Portland,* 400 A.2d 340, 341–42 n. 4 (Me.1979).

that defendant had no record of such fees other than his personal copy of state and federal individual income tax returns. The court noted that officially maintained records of fees received for service of process, if they existed, would be "public records" but held that tax returns reporting the same information are confidential and are not public records. Plaintiffs argue on appeal that the court erred in failing to require disclosure. Defendant cross-appeals from the court's suggestion that officially maintained records would be public records. We dismiss defendant's cross-appeal because the challenged suggestion is not a judgment of the Superior Court. We sustain plaintiffs' appeal.

### I.

On July 2, 1982 plaintiffs' attorney sent a letter to the sheriff of Hancock County and to defendant, a part-time deputy, requesting an opportunity to examine "public records" of the fees received for service of civil process. Defendant responded in writing within 10 days as required by 1 M.R.S.A. § 409(1) (1979). He refused to honor plaintiffs' request on the grounds that he is not a public official, that the requested records do not come within the Freedom of Access Act, and that the information requested is available for public inspection by an examination of the returns of service filed in the various court locations of the State of Maine and elsewhere.[2]

Plaintiffs filed a timely complaint[3] pursuant to 1 M.R.S.A. § 409(1) requesting an order requiring disclosure by the defendant and subsequently moved for summary judgment on the basis of the pleadings and defendant's deposition. Following the court's denial of that motion, the parties submitted the matter on the same record and the court entered judgment in favor of

defendant. From that judgment the present appeal and cross-appeal are taken.

### II.

A brief description of the procedure followed in the service of civil process demonstrates the context within which the present case arose. Maine law permits civil process to be served by a sheriff or a deputy sheriff and specifies the fees which may be charged for the service of various types of civil process. 30 M.R.S.A. § 1051 (1978 & Supp.1982–1983). Deputies who are "not on a salary or per diem basis may receive and retain fees from the service of . . . civil process" and such fees "shall be collected by them exclusively from the litigants." 30 M.R.S.A. § 2(4)(B) (Supp.1982–1983).

M.R.Civ.P. 4 requires the person serving civil process to make a return of service thereon. The prescribed form for return of service requires disclosure of the fee charged for service and any charge for mileage. After the return of service is completed, it is delivered to the litigant or his attorney, who pays the deputy sheriff and then files the return in the appropriate court. Other than the return of service, no record keeping is required as part of the performance of the official act.

Defendant does not now contest the fact that he is a "public official" for purposes of the act even though that term is not defined by 1 M.R.S.A. § 402. *See State v. Brown,* 129 Me. 169, 151 A. 9 (1930) (deputy sheriff is a public officer). Section 408 of the act states unequivocally that unless otherwise provided by statute "every person shall have the right to inspect and copy any public record." Plaintiffs do not dispute the conclusion of the presiding justice that the only record in the possession of defendant is the copy of his individual income tax return. We must determine therefore whether defendant's tax returns are "public

---

**2.** It is significant to note that unlike the plaintiffs in *Moffett* defendant has not at any point in these proceedings asserted a privilege against self-incrimination.

**3.** The complaint named the sheriff and defendant as parties. The action against the sheriff was voluntarily dismissed after it was determined that he had no records within his possession.

records" subject to inspection on plaintiffs' request.

■ The term "public records" and the relevant exceptions are defined in 1 M.R. S.A. § 402(3) as:

> any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained, directly or after translation into a form susceptible of visual or aural comprehension, that is in the possession or custody of an agency or public official of this State or any of its political subdivisions and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business, except:
>
> A. Records that have been designated confidential by statute;
>
> B. Records that would be within the scope of a privilege against discovery or use as evidence recognized by the courts of this State in civil or criminal trials if the records or inspection thereof were sought in the course of a court proceeding;
>
> . . . .

Plaintiffs concede that defendant's tax returns were not prepared "in connection with the transaction of public or governmental business," but they contend that the tax returns do contain "information relating to the transaction of public or governmental business," namely, the report of the fees and mileage charges defendant received for serving civil process. Plaintiffs argue that defendant's "personal tax return becomes the public record" if he maintains no other record and the only alternative source of information is a record which is "unavailable without a detailed search of the files of every court in the state." We are not persuaded that the availability of

other records has any part in the analysis. The definition contained in section 402(3) does not turn on the availability of other sources for the information sought. If a tax return possessed by a public official contains information relating to the transaction of public business the return is a public record unless it falls within one of the statutory exceptions.

In construing the term "public records" we "must look first and primarily at the language of the provision." *Moffett v. City of Portland,* 400 A.2d 340, 345 (Me.1979). It is apparent that the legislature sought to avoid uncertainty by enacting a very broad, all-encompassing definition subject only to specific exceptions. The statute was designed to avoid restrictive common law definitions of public records. It declares as a matter of public policy that records of public action shall be open to public inspection. It leaves little room for qualification or restriction.

■ Defendant describes the information in his tax returns as "related in only the most peripheral manner with the transaction of governmental business." Notwithstanding the attenuated relationship between the information in his tax returns and the performance of his public duty, the copies of the tax returns in his possession contain information *relating* to the transaction of public business. We are compelled to conclude that those portions of the copies of defendant's tax returns reporting his income from the service of civil process are public records. A liberal construction of the language of section 402(3) permits no other conclusion.[4]

In order to avoid disclosure of the tax returns, it must be demonstrated that one of the definitional exceptions is applicable. On two prior occasions we have ruled on the scope of the exceptions to the definition of public records. *Dunn & Theobald, Inc. v.*

---

4. It should be noted that payroll records for public employees have been uniformly held to be public records and subject to inspection under acts similar to Maine's Freedom of Access Act. *See, e.g., Hastings & Sons v. Lynn,* 374 Mass. 812, 375 N.E.2d 299 (1978). In the present case, the absence of officially maintained records gives rise to the need to resort to defendant's tax returns.

*Cohen,* 402 A.2d 603 (Me.1979); *Moffett v. City of Portland,* 400 A.2d 340 (Me.1979). We have stated that the liberal construction mandated by the act requires, as a corollary, "a strict construction of any exceptions to the required public disclosure." *Moffett,* 400 A.2d at 348.

The presiding justice in the Superior Court, relying on 26 U.S.C.A. § 6103(a) (1980 & Supp.1983) and 36 M.R.S.A. § 191 (1978 & Supp.1982–1983), held that the tax returns are confidential records within the exception in section 402(3)(A). In this regard he erred. The statutes he relied on declare that the tax returns *filed with the government* are confidential. Both the federal and state statute prohibit disclosure by those who have access to the filed document. Neither statute declares that a copy of such a return, retained by the taxpayer, is a confidential record.

We are mindful of the authority holding that, absent a waiver, confidentiality extends by implication to the taxpayer's copy of the tax return. *See, e.g., Webb v. Standard Oil Company of California,* 49 Cal.2d 509, 319 P.2d 621 (1957); *Leave v. Boston Elevated Ry. Co.,* 306 Mass. 391, 28 N.E.2d 483 (1940). The jurisdictions which have extended the statutory grant of confidentiality have done so in an effort to protect the taxpayer's privacy and to encourage accurate reporting. Such an extension of confidentiality is accomplished only by creating a testimonial privilege covering a class of facts within the knowledge of the taxpayer. The privilege applies in all litigation, including that in which the taxpayer seeks recovery for lost wages or diminished earnings capacity as a result of personal injuries. The majority view, exemplified by *Heathman v. United States District Court,* 503 F.2d 1032 (9th Cir.1974), holds to the contrary, namely, that tax returns are not privileged and are admissible in evidence and subject to discovery in appropriate circumstances.[5] Wigmore describes the law in the following terms:

In the case of *tax returns,* it is usually held that the statutes do create an evidentiary privilege, prohibiting disclosure (with certain exceptions) in court by the administrative officials. But the privilege stops there. Copies of the returns in the taxpayer's hands are not privileged, nor has he a privilege to refuse to obtain and produce copies or to testify as to the contents of the return.

8 J. Wigmore, Evidence § 2377, at 781–82 (1961) (footnotes omitted). *See also* 4 J. Moore, Moore's Federal Practice, ¶ 26.61 [5.–2] at 26–294 (2d ed. 1979); 8 Wright & Miller, Federal Practice and Procedure, § 2019 at 162–64 (1970).

A further reason for rejecting the claim of privilege in Maine is supplied by M.R. Evid. 501:

Except as otherwise provided by Constitution or statute or by these or other rules promulgated by the Supreme Judicial Court of this state no person has a privilege to:

(1) Refuse to be a witness; or

(2) Refuse to disclose any matter; or

(3) Refuse to produce any object or writing; or

(4) Prevent another being a witness or disclosing any matter or producing any object or writing.

Defendant does not suggest that the privilege asserted is explicitly recognized by Constitution, statute, or rule of court, but rather, he asserts that the confidentiality established by 26 U.S.C.A. § 6103 and 36 M.R.S.A. § 191, implies such a privilege. Both statutes restrict the dissemination of tax returns by the government but neither expressly creates a testimonial privilege for the taxpayer. Rule 501 prohibits the judicial creation of a testimonial privilege other than through the exercise of the rulemaking powers of the Supreme Judicial Court. The legislature is the appropriate branch of government to consider whether the public fisc requires that the definition of public

---

**5.** In ordinary civil litigation the taxpayer can resist disclosure on the basis of relevance. That objection is not available in an action for disclosure under the Freedom of Access Act.

records be amended in order to encourage accurate tax reporting and self assessment.

We hold on the facts of the present case that the copies of defendant's tax returns are public records and are neither confidential nor privileged within the meaning of 1 M.R.S.A. § 402(3). On remand the Superior Court should order disclosure of those portions of defendant's tax returns which reflect income resulting from the performance of his official duties in serving civil process.

The entry must be:

Judgment of the Superior Court reversed.

Remanded to the Superior Court for the entry of an order for disclosure consistent with the opinion herein.

McKUSICK, C.J., and GLASSMAN and SCOLNIK, JJ., concurring.

ROBERTS, Justice, with whom NICHOLS and VIOLETTE, Justices, join dissenting.

I do not agree with the decision of the Court to require the disclosure of Reginald McDevitt's personal tax return. McDevitt is under no duty to disclose unless his tax return is a "public record" within the meaning of the Maine Freedom of Access Act, 1 M.R.S.A. §§ 401–410 (1979). I reject as overbroad and exceeding the legislative purpose the Court's mechanical interpretation of the words of the statute. Both the history and the circumstances surrounding this legislation demonstrate the absence of any such radical departure from the scope of the original "Right to Know Law."

The legislative and judicial history of attempts to provide greater access to information concerning governmental activity has been chronicled by H.L. Cross in *The People's Right to Know: Legal Access to Public Records and Proceedings* (1953). Cross, a Maine resident whose book title probably gave our original statute its popular name, served as a consultant to the Maine Joint Committee on Freedom of Information, which sponsored the original Freedom of Access Act, P.L.1959, ch. 219.

He described the confusion that resulted from judicial reliance upon definitions of "public records" which were enacted or declared for purposes other than access, e.g., for compilation and preservation of records, for admissibility as evidence or for defining a crime of forgery, and called upon courts and legislatures to address the problem of defining the phrase specifically for the purpose of providing public access. He warned against the use of such limiting language as "required by law" or "recorded pursuant to law," and advocated more liberal description of writings which "constitute a convenient, appropriate or customary method of discharging the duties of the office." His emphasis throughout, however, was upon the nature of the record and its use, *in fact,* in state business.

Against this background the 99th Legislature enacted the predecessor of the present statute without any express definition of public records. The bill's chief proponent thereafter reported to members of the Committee on Freedom of Information:

[A]s far as records are concerned ... in the past almost every ... agency or department has held it to be its own right to decide what records ... it will make public or will withhold.... *This cannot be the case any more.* We have the attorney general's opinion and Harold Cross' opinion that our law means that *any* record not specifically exempt by *statute* is now a public record....

Memorandum of Brooks W. Hamilton, Chairman, Maine Joint Committee on Freedom of Information, dated May 7, 1959 (emphasis in original). Nowhere in the history of Maine's legislative effort is there any suggestion that records other than those governmental in nature were within the reach of the statute.

The present language of section 402(3) was enacted by P.L.1975, ch. 483, § 3 and P.L.1975, ch. 623, § 1. The critical language upon which the plaintiffs rely, "or contains information relating to the transaction of public or governmental business," was inserted as part of an omnibus "Errors and Inconsistencies" bill. Although the

record indicates there was debate about the impact upon legislative documents and papers, there is no hint that legislators intended to sweep essentially personal papers into the public domain.

I agree with the opinion of the Court that the presence or absence of other public records is immaterial, although the plaintiffs make much of the absence of any other convenient source of information. If Reginald McDevitt's tax return is a public record because it is "in the possession . . . of . . . [a] public official . . . and . . . contains information relating to the transactions of public . . . business," then so, too, is the tax return of any other public official who receives income in connection with his public duties. Even a private diary, assuming it contained information relating to the transaction of public business, would be subject to citizen inspection.

Common sense convinces me that an official's personal tax return remains in the private as opposed to the public domain. An individual tax return is inherently private. It is simply not one of those records intended to be within the sweep of the legislature's admittedly broad definition. The return relates to the personal obligation for payment of taxes, and bears only the most tenuous association to the transaction of public business. I would affirm the judgment of the Superior Court.