STATE OF MAINE                                  SUPERIOR COURT
KENNEBEC, ss.                                   CIVIL ACTION
                                                DOCKET NO. CV-21-141

                                    )
                                    )
THE MAINE CENTER FOR PUBLIC         )
INTEREST REPORTING,                 )
                                    )
          Plaintiff,                )
                                    )        **ORDER ON PLAINTIFF'S**
                                    )          **FOAA APPEAL**
     v.                             )
                                    )
YORK COUNTY,                        )
                                    )
          Defendant.                )
                                    )

On June 25, 2021, Samantha Hogan, a reporter employed by the plaintiff,

The Maine Center for Public Interest Reporting (the "Center"), submitted a request

pursuant to the Freedom of Access Act ("FOAA"), 1 M.R.S. § 400 *et seq.*, to York

County seeking records related to the County's potential practice of recording

privileged telephone calls between jail inmates and their attorneys. York County

denied the Center's request in full. The Center then appealed the denial to this

court. *See* 1 M.R.S. § 409(1).

     Since the filing of this action, York County has produced many of the records

sought by the Center. However, one category of records, known as "Call Detail

Reports," has yet to be disclosed. The issue before the court is whether Call Detail

Reports of attorney-inmate calls constitute "public records" as that term is defined

under FOAA. For the reasons below, the court concludes that the records satisfy

that definition and orders disclosure accordingly.

1

# BACKGROUND

York County Jail's Call Management System. York County Jail, along with several other jails around the State, contracts with a private company, Securus Technologies, Inc. ("Securus"), to provide telephone services to inmates. J.S.F. ¶ 11.[1] In most cases, inmates must use Securus's call management system, the Secure Call Platform, to speak with their attorneys and others outside the jail. J.S.F. ¶¶ 14, 21. Collect calls made by inmates are charged at per-minute rates based on prices negotiated between York County and Securus. J.S.F. ¶ 25. York County receives commission payments from Securus that are based in part on completed collect calls made through the Secure Call Platform. J.S.F. ¶ 24. Inmate-attorney calls are among the calls from which commission payments may be collected. *Id.*

The Secure Call Platform records telephone calls by default. J.S.F. ¶¶ 14-19. Each call is prefaced with a warning that the call is subject to monitoring and recording. J.S.F. ¶¶ 22-23.[2] The platform, however, includes a feature that allows York County officials to mark specific telephone numbers as "private." J.S.F. ¶¶ 14-19. If a number is marked as "private," the Secure Call Platform does not record the call. *Id.* When York County executed its contract with Securus in 2015, the telephone numbers of various criminal defense attorneys were inputted and marked as private within the system. J.S.F. ¶¶ 11, 16.

---

[1] Citations are to the Joint Stipulations of Fact ("J.S.F.") submitted by the parties.

[2] In August 2020, an additional warning was added that states: "[I]f you are an attorney, hang up and dial 1-800-844-8561, after this, the call is subject to monitoring and recording." J.S.F. ¶ 23.

Under the contract, designated York County employees may access the Secure Call Platform, including Call Detail Reports ("CDRs"). J.S.F. ¶ 36; Ex. C at 2. CDRs do not capture the contents of the calls recorded by the platform, but rather, contain certain metadata associated with inmate calls. J.S.F. ¶¶ 32-35. Specifically, CDRs indicate whether an inmate's call was recorded[3]; the name of the inmate and telephone number dialed; the date and time of the call; and the amount charged for the call. J.S.F. ¶¶ 32-34; Ex. E.

Using Securus's system, designated York County employees may export data contained in CDRs into a spreadsheet. J.S.F. ¶ 38. The system can generate CDRs limited to specific telephone numbers. See J.S.F. ¶¶ 28, 37-38.[4]

In response to the Center's various FOAA requests, Androscoggin, Aroostook, Franklin, Kennebec, and Penobscot Counties produced the requested CDRs without litigation. J.S.F. ¶ 27. An example of such a record may be found in the CDRs

---

[3] An "X" in the "Priv" column (see infra pg. 4) means that the telephone number called was marked private and hence, the call was not recorded. The absence of an "X" in the "Priv" column means that the telephone number called was not marked private and hence, the call was recorded. J.S.F. ¶ 33.

[4] Designated York County employees may also use the Secure Call Platform to play and download recordings of calls. J.S.F. ¶ 40. The system automatically indicates whether a York County employee accessed an inmate call to "download," "save to folder," "burn to CD," "monitor," or "playback." J.S.F. ¶ 41. The reports documenting this information are known as "Audit Log Reports." Id. York County produced records in response to the Center's request for Audit Log Reports. Those records revealed one instance where an employee burned an attorney call to a CD and another instance where an attorney call was "saved to folder." J.S.F. ¶¶ 40, 44. The records did not indicate that the calls were listened to. J.S.F. ¶ 44.

produced by Kennebec County, which appear in Exhibit E and are reproduced in

part below:

| Dialed# | Dest Zone | Start Time | End Time | Dur.(s) | Acct# | PIN | Prepaid | First Name | Last Name | Call Type | Call Status | Term Cat. | BlkReason | Priv | Wat'd | Int'l | 3Way | VB | Amount | Taxes & Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2076208294 | Local | 2019-01-02 08:36:47 | 2019-01-02 08:37:56 | 69 | 19206 | 192061979 | | ROBERT | PERKINS | Direct Bill | Complete | Investigator Pro Mapping Error | X | N | N | | N | | | |
| 2077734000 | Intralata/Intrastate | 2019-01-02 10:11:15 | 2019-01-02 10:13:26 | 0 | 17551 | 175511985 | | SHAWN | LIGGETTO | Debit | Incomplete | Investigator Pro Mapping Error | X | N | N | | N | 0 | 0 |
| 2076233731 | Local | 2019-01-02 10:32:17 | 2019-01-02 10:34:01 | 104 | 19212 | 192121964 | | PHILIP | BUSSIERE | Debit | Complete | Investigator Pro Mapping Error | X | N | N | | N | 1.62 | 0.14 |
| 2077738001 | Intralata/Intrastate | 2019-01-02 12:15:52 | 2019-01-02 12:18:10 | 0 | 12186 | 121861989 | | ERIC | BARD | Instant Pay-Account Activator | Incomplete | FCC2 Not Completed (Call Not Accepted) | X | N | N | | N | | |
| 2077738001 | Intralata/Intrastate | 2019-01-02 13:07:47 | 2019-01-02 13:10:50 | 0 | 12186 | 121861989 | | ERIC | BARD | Instant Pay-Account Activator | Incomplete | FCC2 Not Completed (Call Not Accepted) | X | N | N | | N | | |
| 2076233731 | Local | 2019-01-02 13:11:25 | 2019-01-02 13:12:55 | 0 | 12186 | 121861989 | | ERIC | BARD | Instant Pay | Incomplete | Investigator Pro Mapping Error | X | N | N | | N | | |
| 2076226161 | Local | 2019-01-02 13:26:36 | 2019-01-02 13:26:59 | 0 | 2148 | 21481981 | | STEPHEN | DINGUS | Debit | Incomplete | Insufficient Funds | X | N | N | | N | 0 | 0 |
| 2076226161 | Local | 2019-01-02 13:27:03 | 2019-01-02 13:28:58 | 0 | 2148 | 21481981 | | STEPHEN | DINGUS | Instant Pay | Complete | Caller Hang up | X | N | N | | N | | |
| 2076208294 | Local | 2019-01-02 13:29:36 | 2019-01-02 13:35:03 | 327 | 19206 | 192061979 | | ROBERT | PERKINS | Direct Bill | Complete | Investigator Pro Mapping Error | X | N | N | | N | | |
| 2077734000 | Intralata/Intrastate | 2019-01-02 14:58:23 | 2019-01-02 15:00:47 | 0 | 17551 | 175511985 | | SHAWN | LIGGETTO | Debit | Incomplete | Caller Hang up | X | N | N | | N | 0 | 0 |
| 2077734000 | Intralata/Intrastate | 2019-01-03 08:37:25 | 2019-01-03 08:40:23 | 0 | 17551 | 175511985 | | SHAWN | LIGGETTO | Debit | Incomplete | Investigator Pro Mapping Error | X | N | N | | N | 0 | 0 |
| 2077734000 | Intralata/Intrastate | 2019-01-03 09:32:06 | 2019-01-03 09:34:25 | 0 | 17551 | 175511985 | | SHAWN | LIGGETTO | Debit | Incomplete | Investigator Pro Mapping Error | X | N | N | | N | 0 | 0 |
| 2077734000 | Intralata/Intrastate | 2019-01-03 10:48:52 | 2019-01-03 10:50:54 | 0 | 17551 | 175511985 | | SHAWN | LIGGETTO | Debit | Incomplete | Investigator Pro Mapping Error | X | N | N | | N | 0 | 0 |
| 2077734000 | Intralata/Intrastate | 2019-01-03 11:40:04 | 2019-01-03 11:41:56 | 0 | 17551 | 175511985 | | SHAWN | LIGGETTO | Debit | Incomplete | Caller Hang up | X | N | N | | N | 0 | 0 |
| 2076218188 | Local | 2019-01-03 12:32:34 | 2019-01-03 12:34:55 | 0 | 2430 | 24301955 | | GEORGE | BROWNING | Debit | Incomplete | Caller Hang up | X | N | N | | N | 0 | 0 |
| 2076233731 | Local | 2019-01-03 13:57:00 | 2019-01-03 13:59:01 | 0 | 19212 | 192121964 | | PHILIP | BUSSIERE | Debit | Incomplete | Investigator Pro Mapping Error | X | N | N | | N | 0 | 0 |
| 2077738001 | Intralata/Intrastate | 2019-01-03 14:43:44 | 2019-01-03 14:44:18 | 0 | 12186 | 121861989 | | ERIC | BARD | Debit | Incomplete | Insufficient Funds | X | N | N | | N | 0 | 0 |
| 2077738001 | Intralata/Intrastate | 2019-01-03 14:44:19 | 2019-01-03 14:46:30 | 0 | 12186 | 121861989 | | ERIC | BARD | Instant Pay-Account Activator | Incomplete | FCC2 Not Completed (Call Not Accepted) | X | N | N | | N | | |
| 2076233731 | Local | 2019-01-03 14:47:53 | 2019-01-03 14:49:22 | 0 | 12186 | 121861989 | | ERIC | BARD | Instant Pay | Incomplete | Investigator Pro Mapping Error | X | N | N | | N | | |
| 2076233731 | Local | 2019-01-04 08:57:26 | 2019-01-04 08:58:26 | 60 | 19212 | 192121964 | | PHILIP | BUSSIERE | Debit | Complete | Investigator Pro Mapping Error | X | N | N | | N | 1.48 | 0.12 |
| 2076223711 | Local | 2019-01-04 12:40:15 | 2019-01-04 12:41:29 | 0 | 18410 | 184101982 | | MICHAEL | STEVENS | Instant Pay | Incomplete | Investigator Pro Mapping Error | X | N | N | | N | | |
| 2077738001 | Intralata/Intrastate | 2019-01-04 14:06:05 | 2019-01-04 14:09:09 | 0 | 12186 | 121861989 | | ERIC | BARD | Instant Pay-Account Activator | Incomplete | FCC2 Not Completed (Call Not Accepted) | X | N | N | | N | | |
| 2078777781 | Local | 2019-01-04 14:17:00 | 2019-01-04 14:18:31 | 0 | 19073 | 190731111 | | HEIDI | SWANSON | Debit | Incomplete | Investigator Pro Mapping Error | X | N | N | | N | 0 | 0 |
| 2077738001 | Intralata/Intrastate | 2019-01-04 15:02:15 | 2019-01-04 15:04:23 | 0 | 12186 | 121861989 | | ERIC | BARD | Instant Pay-Account Activator | Incomplete | FCC2 Not Completed (Call Not Accepted) | X | N | N | | N | | |
| 2079319319 | Local | 2019-01-06 16:18:04 | 2019-01-06 16:20:26 | 142 | 7656 | 76561983 | | GERARD | CORMIER | AdvanceConnect | Complete | Caller Hang up | | N | N | | N | | |
| 2079319319 | Local | 2019-01-07 08:22:31 | 2019-01-07 08:24:57 | 146 | 18473 | 184731955 | | ROLAND | PELLETIER | AdvanceConnect | Complete | Investigator Pro Mapping Error | | N | N | | N | | |
| 2072215736 | Intralata/Intrastate | 2019-01-07 12:43:40 | 2019-01-07 12:45:33 | 0 | 5633 | 56331984 | | ROBERT | ROBINSON | Direct Bill | Incomplete | Investigator Pro Mapping Error | X | N | N | Y | N | | |
| 2055582302 | Intralata/Intrastate | 2019-01-07 13:44:27 | 2019-01-07 13:47:08 | 0 | 17449 | 174491985 | | ERIC | COLBERT | Debit | Incomplete | No Positive Acceptance | | N | N | | N | 0 | 0 |
| 2076672561 | Intralata/Intrastate | 2019-01-07 14:01:25 | 2019-01-07 14:06:23 | 298 | 2148 | 21481981 | | STEPHEN | DINGUS | Debit | Complete | Caller Hang up | X | N | N | | N | 3.03 | 0.25 |

<u>The Center's Request and FOAA Appeal</u>. The Center is a nonprofit news

organization that publishes The Maine Monitor, an investigative news service.

J.S.F. ¶ 1. In various articles authored by Ms. Hogan, the Center has reported that

Maine jails have recorded nearly 1000 privileged inmate-attorney calls and in some

instances, shared the recordings with law enforcement and the Maine Office of

Children and Family Services. J.S.F. ¶¶ 5-7. In furtherance of her ongoing

investigation, Ms. Hogan submitted a FOAA request to York County on June 25,

2021. Among other records, Ms. Hogan requested CDRs of all inmate calls to

specified telephone numbers associated with criminal defense attorneys contracted

with the Maine Commission on Indigent Legal Services, for the dates January 1,

4

2019, through June 25, 2021. J.S.F. ¶ 8.[5] York County denied the request on two grounds: (1) the CDRs were not "public records" under FOAA, that is, they were not "received or prepared for use in connection with the transaction of public or governmental business" nor did they "contain[] information relating to the transaction of public or governmental business," *see* 1 M.R.S. § 402(3); and (2) obtaining the requested information would require the County to create a record in violation of 1 M.R.S. § 408-A(6).

The Center appealed the denial to this court pursuant to 1 M.R.S. § 409(1). To aid the court's resolution of this matter, the parties filed a Joint Stipulation of Fact, which serves as the factual record for purposes of this appeal. Briefing and oral argument followed. At the briefing stage, York County withdrew the second asserted ground for denying the plaintiff's FOAA request (i.e., that it had no obligation to create a record). *See* Def.'s Br. 13. As such, the court is left with one issue to decide: Whether the requested CDRs constitute "public records" under FOAA. *See* 1 M.R.S. § 402(3).

## DISCUSSION

The Legislature enacted FOAA with the express intent that public actions "be taken openly and that the records of [public] actions be open to public inspection and [public] deliberations be conducted openly." 1 M.R.S. § 401; *MaineToday Media, Inc. v. State*, 2013 ME 100, ¶ 8, 82 A.3d 104. To that end, FOAA provides that,

---

[5] Ms. Hogan also sought Audit Log Reports, a username list, and certain additional communications. As noted, York County initially denied Ms. Hogan's request for those records but has since provided them to the Center.

5

"[e]xcept as otherwise provided by statute, a person has the right to inspect and copy any public record in accordance with this section within a reasonable time of making the request to inspect or copy the public record." 1 M.R.S. § 408–A; *MaineToday*, 2013 ME 100, ¶ 8, 82 A.3d 104. By statute, FOAA "shall be liberally construed and applied to promote its underlying purposes and policies as contained in the declaration of legislative intent." 1 M.R.S. § 401.

When a party appeals from a denial of a FOAA request, "[t]he court must [] determine whether the [] refusal to allow inspection was supported by 'just and proper cause.'" *Blue Sky W., LLC v. Maine Revenue Servs.*, 2019 ME 137, ¶ 24, 215 A.3d 812 (quoting 1 M.R.S. § 409(1)). "'The burden of proof is on the agency or political subdivision [from which the information is sought] to establish just and proper cause for the denial of a FOAA request.'" *MaineToday*, 2013 ME 100, ¶ 9, 82 A.3d 104 (alteration in original) (quoting *Anastos v. Town of Brunswick*, 2011 ME 41, ¶ 5, 15 A.3d 1279). If the governmental entity fails to carry its burden, "the court shall enter an order for disclosure." 1 M.R.S. § 409(1).

As noted, the disagreement in this case centers on whether attorney-inmate CDRs constitute "public records." That term is statutorily defined to include:

> any written, printed or graphic matter . . . that is in the possession or custody of an agency or public official of this State or any of its political subdivisions, . . . and has been received or prepared for use in connection with the transaction of public or governmental business or *contains information relating to the transaction of public or governmental business . . . .*

1 M.R.S. § 402(3) (emphasis added).

The Law Court has described Section 402(3)'s definition as "a very broad, all-encompassing definition" that "leaves little room for qualification or restriction." *Wiggins v. McDevitt*, 473 A.2d 420, 422 (Me. 1984). Even documents with an "attenuated relationship" to the transaction of governmental business "relat[e] to" such business and thus, qualify as public records. *Id.*

Here, the parties dispute whether the requested CDRs "contain[] information relating to the transaction of public or governmental business" under Section 402(3). 1 M.R.S. § 402(3). The Center argues that attorney-inmate CDRs qualify as public records because they shed light on (1) York County's practice of recording privileged calls, as well as (2) the income the County derives from calls placed over the Securus system. York County, meanwhile, argues that because inmates and attorneys are not government employees, "[e]ach entry on a Call Detail Report is a record of a personal telephone call." Def.'s Br. 7, 10. In York County's view, details of personal calls are unrelated to the transaction of governmental business and do not qualify as public records. York County relies extensively on the Law Court's decision in *Doyle v. Town of Falmouth* to support its position. 2014 ME 151, 106 A.3d 1145.

Having considered the parties' arguments and the authorities they cite, the court concludes that York County has failed to carry it burden to demonstrate that its denial of the Center's request was supported by "just and proper cause." *MaineToday*, 2013 ME 100, ¶ 9, 82 A.3d 104. The requested records fall within the purview of FOAA because they contain information relating to the transaction of

7

governmental business. As the Center correctly observes, there are two types of "governmental business" at issue: The York County Jail's practice of (1) recording telephone calls between inmates and their attorneys, and (2) deriving income from the calls. 1 M.R.S. § 402(3). Moreover, the CDRs "contain[] information relating to" those types of business: (1) the "Priv" column of the records indicates whether York County Jail recorded the call, and (2) the "Amount" column shows how much was charged. *Id.* Thus, the court is satisfied that the reports at issue qualify as public records under Section 402(3)'s "broad, all-encompassing definition." *Wiggins*, 473 A.2d at 422.

To be clear, the court takes no position on whether Section 402(3)'s definition of "public records" extends to CDRs of calls between inmates and non-attorneys. That issue is not before the court, as the plaintiff's FOAA request was limited to attorney-inmate CDRs. Accordingly, the court's ruling in this case is narrow: CDRs of inmate-attorney calls are public records under FOAA. The Law Court's decision in *Doyle* is not to the contrary.

In *Doyle*, the Law Court upheld a town's partial denial of the plaintiff's FOAA request for the cellphone records of the former school superintendent, who used a school-issued phone that was paid for by the school department. 2014 ME 151, ¶¶ 1-2, 106 A.3d 1145. There was no policy preventing employees from using their cellphones for personal purposes, and the superintendent evidently used hers to make personal calls to healthcare providers, her grandchildren's daycare, and her family and friends. *Id.* ¶ 2 & n.4.

8

In response to a FOAA request that sought copies of the superintendent's "cellular telephone bills," the town provided records that revealed the "date, time, and duration of all calls placed or received by the Superintendent, as well as the total amount charged to the School Department for the Superintendent's use of the phone." *Id.* ¶¶ 2-3, 5. However, the town redacted the telephone numbers associated with the superintendent's personal calls. *Id.* ¶¶ 4-5.

On appeal, the Law Court held that the redactions were proper under FOAA. While acknowledging the "'very broad, all encompassing definition'" of "public records," the court concluded that the plain language of the definition "demonstrates that records of personal telephone calls made by the former Superintendent that were unrelated to the transaction of public or government business do not fall within the definition." *Id.* ¶ 14. The Law Court emphasized that the town did not prohibit the use of the government-issued phones for personal matters. *Id.* In the court's view, "[t]hat the Town . . . provided some employees with cellular phones d[id] not convert all of the calls made on those phones into public records pursuant to the Act." *Id.* The court accordingly concluded that it was appropriate "to redact information concerning the calls, other than those related to the Town's business" from the superintendent's cellphone billing records. *Id.*

York County advocates for a broad reading of *Doyle* whereby records of personal calls categorically fall outside the definition of a public record. Such an interpretation, however, overlooks certain qualifying language in the Law Court's opinion: "records of personal telephone calls made by the former Superintendent

9

*that were unrelated to the transaction of public or government business* do not fall within the definition." *Id.* (emphasis added). Thus, *Doyle* did not hold that *all* records of personal calls were outside the scope of FOAA—only those records "unrelated to the transaction of . . . government business." *Id.*

Important factual distinctions between the present case and *Doyle* demonstrate why FOAA requires disclosure of the CDRs. Unlike in *Doyle*, the records in this case were generated at a county jail. The requested CDRs, though they involve calls between non-government actors, shed light on how York County administers the detention of the inmates in its custody—a core government function. *See Procunier v. Martinez*, 416 U.S. 396, 412 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989) ("One of the primary functions of government is the preservation of societal order through enforcement of the criminal law, and the maintenance of penal institutions is an essential part of that task."); *Torcasio v. Murray*, 57 F.3d 1340, 1345 (4th Cir. 1995) ("It cannot be disputed that the management of state prisons is a core state function."). Put another way, it is not the fact of the calls that makes the CDRs disclosable, but rather what the CDRs reveal about how York County manages those calls.

For example, the records bear upon how the jail controls an inmate's access to the outside world and its surveillance of the inmate population. The *Doyle* case, involving the telephone records of a person who was not in government custody and whose calls were not recorded, did not implicate similar concerns. The CDRs also show the extent to which the jail is honoring the attorney-client privilege to which

10

inmates are entitled. *See* M.R. Evid. 502; *State v. DeMotte*, 669 A.2d 1331, 1334 (Me. 1996) (suggesting that incarcerated persons retain attorney-client privilege, though in some cases, the right may be balanced against the State's legitimate penological interests). In *Doyle*, by contrast, the redacted records did not reveal anything about the propriety of the government's actions—a point the Law Court highlighted. *Doyle*, 2014 ME 151, ¶ 14, 106 A.3d 1145 (explaining that the "Town and School Department did not prohibit the School Department employees who received government-issued cellular telephones from using those phones in connection with their personal matters."). The court accordingly concludes that because the requested CDRs in this case contain information about how a government entity conducts its business, disclosure is consistent with the principles enunciated by the Law Court in *Doyle*.

In ordering disclosure, the court is mindful of the inmate privacy concerns raised by York County. However, the court is assured that the content of the calls will not be released. *See* J.S.F. ¶ 35.[6] Moreover, inmates are warned at the beginning of each call that their calls may be monitored and recorded, affording them notice that their call records may be subject to scrutiny. J.S.F. ¶¶ 22-23.

In short, the court concludes that attorney-inmate CDRs constitute public records under FOAA. And because York County otherwise fails to establish that an

---

[6] Attorney-client privilege is limited to protecting "*the contents* of any confidential communication." M.R. Evid. 502(b) (emphasis added). Thus, the information contained in the CDRs is not subject to the privilege.

exception to the rule of public access applies,[7] the defendant has not met its burden to demonstrate that "'just and proper cause'" supported its denial of the plaintiff's FOAA request. *MaineToday*, 2013 ME 100, ¶ 9, 82 A.3d 104.

The entry is:

The plaintiff's FOAA appeal is granted. York County is ordered to provide the plaintiff access to the attorney-inmate CDRs requested.

The clerk is directed to incorporate this order on the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: 9/6/23

Julia M. Lipez
Justice, Superior Court

---

[7] To support its position that the denial was proper, York County makes passing reference to 34-A M.R.S. § 1216(1), which states: "All orders of commitment, medical and administrative records, applications and reports, and facts contained in them, pertaining to any person receiving services from the [D]epartment [of Corrections] must be kept confidential and may not be disclosed by any person, except that public records must be disclosed in accordance with Title 1, section 408-A [FOAA]." *Id.* (emphasis added). York County, however, does not assert that attorney-inmate CDRs constitute administrative records "pertaining to [a] person receiving services from the department." *Id.* Moreover, Section 1216(1) expressly permits disclosure of administrative records that qualify as "public records" under FOAA. *Id.*