GUY GANNETT PUBLISHING CO.

v.

UNIVERSITY OF MAINE, et al.

Supreme Judicial Court of Maine.

Argued Jan. 18, 1989.
Decided Feb. 10, 1989.

Jonathan S. Piper, Joy C. Cantrell (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for plaintiff.

F. Paul Frinsko (orally), Catherine O'Connor, Bernstein, Shur, Sawyer & Nelson, Portland, for University of Maine.

Howard T. Reben (orally), Sunenblick, Reben, Benjamin & March, Portland, for M.T.A. and Gavett.

Before McKUSICK, C.J., and
ROBERTS, GLASSMAN, CLIFFORD
and COLLINS, JJ.

McKUSICK, Chief Justice.

In this action under the Freedom of Access Act, 1 M.R.S.A. §§ 401–410 (1979 & Supp.1988), plaintiff Guy Gannett Publishing Company seeks disclosure from defendant University of Maine of a settlement agreement between the University and the former coach of its women's basketball team, Peter M. Gavett. Gavett and the Maine Teachers Association intervened as defendants in the action. The Superior Court (Cumberland County; *Cole J.*) ordered disclosure of the entire contents of the agreement, but stayed its order pending appeal. On defendants' appeal, we conclude that one sentence of the agreement contains medical information protected from disclosure under the Maine Civil Service Law, 5 M.R.S.A. § 7070(2)(A) (Pamph. 1988). We therefore modify the judgment of the Superior Court to require that sentence be excised from the agreement to be disclosed under the Superior Court's judgment, and we affirm the Superior Court's judgment as so modified. A copy of the agreement with that one sentence excised is appended to this decision.

In June 1988, Gavett resigned his position as coach of the University's women's basketball team a few months after accepting reappointment for a three-year term to commence September 1, 1988. Gavett's surprise resignation led Gannett to make a series of requests for information under the Freedom of Access Act. The University denied all these requests, contending it had no records required to be disclosed in response to Gannett's requests. Following the University's final denial in August, Gannett filed this action in the Superior Court pursuant to the Freedom of Access Act. The University turned over four documents on September 29,[1] but Gannett was not satisfied that it had received all the documents to which it was entitled.

At a hearing on October 12, the court heard testimony from witnesses presented by both Gannett and the University. The University submitted a settlement agreement between the University and Gavett for in camera review by the court. The question before the court was whether the settlement agreement, or any part of it, was excepted from the rule of disclosure prescribed by the Freedom of Access Act. On October 13, the court ordered the agreement disclosed but stayed execution of its order pending appeal. Appeals by the intervenors and the University have been consolidated.[2]

■ The Freedom of Access Act provides generally that public records are to be available for public inspection, 1 M.R.S.A. § 408 (1979), and that the Act should be "liberally construed and applied" to promote its underlying purpose. *Id.* § 401 (1979). We have held that "a corollary to such liberal construction of the Act is necessarily a strict construction of any exceptions to the required public disclosure." *Moffett v. City of Portland*, 400 A.2d 340, 348 (Me.1979). The Act contains two exceptions to disclosure that the University contends protect the settlement agreement here at issue.

I.

*Exceptions for Certain Personnel Records*

First, the Act provides an exception to disclosure for records designated confidential by statute. 1 M.R.S.A. § 402(3)(A) (1979). The University argues that 5 M.R.S.A. § 7070 (Pamph.1988), which protects certain personnel records of public employees, contains two exceptions to the rule of public disclosure applicable to the settlement agreement. We conclude that one of these exceptions does indeed protect one sentence of the agreement from disclosure, but reject the applicability of the other exception.

■ Section 7070(2)(A) provides an exception to disclosure for public employee personnel records containing "[m]edical information of any kind, including information pertaining to diagnosis or treatment of mental or emotional disorders...." This statutory exception protecting medical information "of any kind" is broadly drawn. Indeed, it would be difficult to draft the exception any more broadly. Even with the rule of strict construction that we must apply to exceptions to the Freedom of Access Act, we conclude that, when a document objectively viewed describes expressly or by clear implication aspects of an employee's medical condition or medical treatment, it contains medical information within the meaning of the statutory exception. Applying these principles to the settlement agreement here at issue, we conclude that the second sentence of paragraph 3 contains such medical information and that section 7070(2)(A) protects that

---

1. The University disclosed the following documents on September 29:
    1. Gavett's June 25, 1988, letter of resignation;
    2. The University's June 26, 1986, letter notifying Gavett of his reappointment for a two-year term to begin September 1, 1986;
    3. The University's January 28, 1988, letter notifying Gavett of his reappointment for a three-year term to begin September 1, 1988; and
    4. A summary of Gavett's payroll record for 1988.

2. In this opinion appellants will be referred to collectively as "the University."

part of the agreement from disclosure. The sentence must therefore be excised from the public record made available to Gannett. *See Wiggins v. McDevitt*, 473 A.2d 420, 422 (Me.1984).

■ The other personnel records exception that the University asserts is set forth in 5 M.R.S.A. § 7070(2)(E). That section preserves the confidentiality of

[c]omplaints, charges or accusations of misconduct, replies to those complaints, charges or accusations and any other information or materials that may result in disciplinary action. If disciplinary action is taken, the final written decision relating to that action shall no longer be confidential after it is completed....

In contrast to the broadly drawn exception for medical information, section 7070(2)(E) is narrowly drawn. The University contends that paragraphs 3 and 5 of the agreement contain information pertaining to misconduct. However, the statute does not protect all information pertaining to misconduct. Standing alone these paragraphs cannot be said to contain any complaint, charge, or accusation of misconduct, reply thereto, or information that may result in disciplinary action. The Superior Court properly determined that no part of the settlement agreement was protected from disclosure by section 7070(2)(E).

## II.

### *Alleged Privileged Status of Settlement Agreement*

■ Finally, the University argues that the settlement agreement falls within a privilege against discovery or use as evidence and that it is therefore protected from disclosure under section 402(3)(B) of the Freedom of Access Act. 1 M.R.S.A. § 402(3)(B) (1979). That section excepts from disclosure

[r]ecords that would be within the scope of a privilege against discovery or use as evidence recognized by the courts of this State in civil or criminal trials if the records or inspection thereof were sought in the course of a court proceeding....

The University contends that Rule 408(a) of the Maine Rules of Evidence, which generally provides that evidence relating to settlements is not admissible to prove liability, constitutes such a privilege against discovery or use as evidence.[3]

We reject the University's argument. As we stated in *Moffett v. City of Portland*, in determining whether a particular record is protected under section 402(3)(B), the court considers

whether by reason of a privilege [the record] would be inadmissible as evidence in a court proceeding in the State of Maine. In addition to the privilege against self-incrimination declared by the Fifth Amendment to the United States Constitution, various privileges codified in Article V of the Maine Rules of Evidence and others provided by statute are "recognized by the courts of this State."

400 A.2d at 346. Rule 408 represents a policy choice to exclude evidence relating to settlements as irrelevant on the issue of liability. It does not make such evidence privileged. Rule 408 comes under Article IV of the Rules of Evidence, entitled "Relevancy and Its Limits." It is Article V of the Rules, entitled "Privileges," that sets forth those privileges against discovery that are contained in the Rules of Evidence.

Furthermore, Rule 408 in terms bars the admissibility of settlement agreements only on substantive issues in dispute between the parties to the agreement. That is not what we are here involved with. This case is not a dispute between the University and Gavett, but rather a dispute between the two of them and Gannett. The inadmissibility in evidence of settlement agreements

---

**3.** M.R.Evid. 408(a) provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromise or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is also not admissible on any substantive issue in dispute between the parties.

has as its policy objective the encouragement of out-of-court disposition of disputes by the parties themselves. *See* Field & Murray, *Maine Evidence* § 408.1, at 127–28 (2d ed. 1987). That objective is in no way compromised by our holding that the public has a right to know the terms upon which a public employer has settled with a resigning contract employee.

The entry is: Judgment of the Superior Court modified to protect from disclosure the second sentence of paragraph 3 of the settlement agreement. As so modified, the judgment is affirmed.

All concurring.

## SETTLEMENT AGREEMENT

AGREEMENT made by, between and among the University of Maine System, acting through the University of Maine, with principal offices in Bangor, Maine (hereinafter "University"), the Associated Faculties of the University of Maine System, Maine Teachers Association/National Education Association, an employee organization with a place of business in Bangor, Maine (hereinafter "Association") and Peter M. Gavett, Head Coach of Women's Basketball and Lecturer in Physical Education and Athletics at the University of Maine, (hereinafter "Peter M. Gavett").

For valuable consideration, and in consideration of the mutual promises and covenants contained herein, the University, the Association and Peter M. Gavett hereby agree as follows:

1. Peter M. Gavett will resign his employment with the University by his submission of a written resignation immediately upon execution of this Agreement, which resignation shall be effective at 5:00 p.m. (D.S.T.) June 17, 1988.

2. Peter M. Gavett will vacate his office at the University of Maine and remove all his personal belongings from the University of Maine campus by July 5, 1988.

3. Peter M. Gavett will have no access to the Memorial Gymnasium/Fieldhouse facility on the University of Maine campus for a period of one year, from July 5, 1988. [sentence deleted]

4. University will pay to Peter M. Gavett the gross lump sum of Thirty-Six Thousand dollars ($36,000) being the equivalent of one year of future salary determined and calculated as of June 27, 1988. From said gross amount, University will make required deductions for Social Security, FICA taxes, Federal and State of Maine withholding taxes.

5. Peter M. Gavett shall not initiate social, verbal or written contact with any woman who is currently a member of the University of Maine women's basketball team or any woman who has been a member of the team during the last two years except with the prior approval of the Athletic Director.

6. In consideration for lump sum payment, under section 4 above, Peter M. Gavett releases and discharges University from any and all demands, claims, or actions of every nature which he, his heirs or assigns, may have against the University in existence or having accrued as of the 27th of June, 1988.

The University, Association and Peter M. Gavett agree that neither they, nor any of their officers, employees or representatives will disclose or communicate to anyone any portion or condition of this Settlement Agreement or the underlying reasons required to divulge information pursuant to a duly authorized court subpeona, summons or judicial order.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, this 25th day of June, 1988.

Peter M. Gavett

_Peter M. Gavett_

University of Maine System

By: _Dale. W. Lick_

Associated Faculties of the University of Maine System/MTA, NEA

By: _David C. Rankin_