STATE OF MAINE                             SUPERIOR COURT
CUMBERLAND, ss                          CIVIL ACTION
STATE OF MAINE
Cumberland, ss, Clerk's Office                          DOCKET NO. CV-10-096

                                        JUN 07 2010   REC

PETER ANASTOS,
        Plaintiff

                                        RECEIVEDORDER ON TOWN'S
v.                                      MOTION FOR SUMMARY
                                        JUDGMENT

TOWN OF BRUNSWICK,
        Defendants


## BEFORE THE COURT

Defendant Town of Brunswick (hereinafter the "Town" or "Brunswick")
has filed a motion for summary judgment pursuant to M.R. Civ. P. 56 on Plaintiff
Peter Anastos's (hereinafter "Anastos") Complaint for Relief Pursuant to the
Freedom of Access Act. 1 M.R.S. § 409(1).

## BACKGROUND

Anastos is employed in the hospitality industry and is the principal of a
full service inn located in the Town of Brunswick.  Anastos filed this Complaint
on March 5, 2010 after the Town refused to provide him with a copy of a
feasibility study related to the Maine Street Station Project (the "Project") on the
ground that the study includes confidential information.  Anastos alleges that by
denying his request for the study, the Town violated his right to inspect public
records pursuant to 1 M.R.S. § 408(1).   Anastos seeks an order from the court
requiring the Town to provide him with a copy of the study.

On January 1, 2007, the Town entered into a joint development agreement
(the "JDA") with JHR Development of Maine, LLC ("JHR") for the development
of the Maine Street Project.  As part of the Project, JHR proposes to construct a
54-room inn.  The Project, as proposed by JHR and approved by the Town

1

Planning Board, also includes five mixed-use buildings, which combine commercial and residential uses. The Project is included in the Development Program[1] approved by the Town Council on March 1, 2010.

The Development Program is described as an effort "to sustain and enhance Brunswick's historical and vibrant traditional downtown business district." Eldridge Aff., Ex. 1 at 1. The "core of the Development Program is the Maine Street Project". Id. The inn is described as the "impetus for continued development of the Maine Street Station Project." Id. In Section 2.2(C) of the JDA, the Town agreed to assist JHR in obtaining approval of a tax increment financing ("TIF") agreement from the Town Council if JHR deemed a TIF to be necessary and the need for a TIF was demonstrated according to commercially reasonable standards.[2] In 2009, JHR began the application process for a TIF with respect to the proposed inn.

On January 13, 2010, JHR attorney John Moncure and JHR project manager Mike Lyne met with Town officials, specifically Town Manager Gary Brown, Director of Finance John Eldridge, and Director of Economic and Community Development David Markovchick. Hilary Rockett, the Manager of JHR, participated in the meeting by phone. During the meeting the representatives of JHR expressed the need for a TIF, including credit

---

[1] The Development Program for The Brunswick Downtown Municipal Development and Tax Increment Financing District. Eldridge Aff, Ex. 1.
[2] Tax increment financing allows municipalities to promote economic development by earmarking property tax revenue from increases in assessed values within a designated TIF financing district. Municipalities may use tax increment financing to help finance a municipality's formally adopted development program. See 30-A M.R.S. §§ 5221-5235. Tax increment financing allows a municipality to "retain all or part of the tax increment revenues generated from the increased assessed value of a tax increment financing district for the purpose of financing the development program. 30-A M.R.S. § 5227(1).

enhancement, in order to proceed with development of the inn. Rockett explained that JHR had commissioned the Pinnacle Advisory Group to complete a study (the "Study") evaluating the feasibility of the proposed inn as part of the Project. According to Rockett, JHR had commissioned the Study, "[i]n order to assess the market for and viability of including a hotel in the Project." Rockett Aff., ¶ 5. During the meeting, Rockett also explained that JHR commissioned the Study to evaluate the inn from a business planning perspective and for use in obtaining private financing for the inn.

According to Rockett: Pinnacle conducted an independent evaluation of the local Brunswick lodging market to determine the market capacity of the proposed inn. The assessment incorporated an examination of the subject site, the characteristics of the proposed inn, a review of existing and projected economic conditions, and an analysis of competitive supply and demand in the regional lodging market. Based on this analysis, Pinnacle made projections and recommendations with respect to occupancy levels, room rates, market segments, and other financial considerations, all based on Pinnacle's experience in the lodging industry. The assessment provides recommendations as to how best to position the proposed inn to capture lodging demand in the defined market area. The results of the analysis are set forth in the Study. JHR considers the Study to be an integral part of its overall business plan for the inn, and "the core, independently produced document upon which all decisions relating to the financing and investment necessary to the development of the inn will be based." Rockett Aff., ¶ 6.

At the January 13, 2010 meeting, the Town requested a copy of the Study in order to evaluate the need for a TIF. After the conclusion of the meeting, JHR

3

provided a copy of the Study to the Town. According to JHR, the Study was provided to the Town as part of the negotiations over the terms of the TIF in order to demonstrate the importance, and commercially reasonable basis for the Town to enter into a credit enhancement agreement in support of the inn. JHR considered the Study to be confidential at the time it provided the study to the Town.

David Markovchick, the Town's Director of Economic and Community Development, reviewed the Study and observed that the Study presents the inn's proposed operating cost structure, expenses, revenue, and operating profitability. Markovchick also observed that the Study contains projected occupancy rates based on market projections developed through market analysis conducted specifically for JHR and the proposed inn. John Eldridge, the Town's Director of Finance, reviewed the Study and observed that the Study contains inn-specific financial information, concerning the inn's projected operating cash flow, that identify the sources of revenue, including room rates, and expenditures, including salaries. Eldridge also observed that the Study contains projected occupancy rates based on market analysis conducted specifically for JHR and the inn project.

On February 19, 2010, Anastos sent a letter and an email to the Town asking the Town for a copy of the Study. The Town forwarded a copy of Anastos's letter to JHR. After receiving Anastos's request, the Town evaluated its obligations under the Freedom of Access Act ("FOAA"). In discussing how to

4

respond to Anastos's request, Markovchick expressed his professional opinion[3] to Town Manager Gary Brown and Director of Finance Eldridge that the Study incorporates a market strategy, based on analysis conducted specifically for JHR, that provides JHR with market differentiation compared to competitors without such information. This market differentiation, Markovchick observed, provides JHR with an advantage over competitors by best positioning JHR to obtain business targeted at specific market segments. Markovchick also explained to Brown and Eldridge that, in his professional opinion, the Study contains sensitive financial information specific to the proposed inn. Markovchick explained that the Study would be of value to a competitor because the information it contains could be used by a competitor to develop a strategy to take business away from the inn before it was even built. Eldridge also recognized the sensitivity of the information contained in the Study and believed the information provides a competitive advantage to its holder, JHR, and could be used to JHR's detriment if obtained by a competitor.

Through its counsel, JHR requested that the Town not provide a copy of the Study to Anastos because JHR considered the Study to be confidential and not subject to disclosure under FOAA, stating "we strongly object to the release of the hotel study which was submitted for your confidential consideration." Counsel for JHR explained that JHR believes the Study is confidential because it contains proprietary information and trade secrets and because disclosing it would give a competitive advantage to a competitor and disclose anticipated

---

[3] The Town's statement of material facts states that Markovchick's "professional opinion" is based on over two decades of experience working to assist in the financing of projects.

5

room rates and occupancy rates to the detriment of JHR. In his request that the Town not release the Study, counsel for JHR included the following statement: "We respectfully request that you provide us with sufficient notice so that we may pursue our remedies if you believe you are required to disclose this important information." Eldridge Aff., Ex. 2.

After internal discussions and considerations of JHR's request that the Study not be publicly disclosed because of the proprietary information it contains, the Town determined that: (1) the Study gives JHR an opportunity to obtain a business or competitive advantage over a competitor who does not have access to the information in that Study; and (2) if the Study is released to the public it would result in a significant detriment to JHR by disclosing its business strategy and enabling competitors to position themselves to take business from the inn.

By letter dated February 26, 2010, the Town's attorney informed Anastos that the Town would not be providing Anastos a copy of the Study. The Town's attorney stated the reason for the denial in the letter. The letter explains that FOAA provides a general right to inspect public records, defines the term "public records," and excludes from the definition of public records any records that have been designated confidential by statute. The letter further explains that the Town believes the Study is a record that is designated confidential by statute, specifically by 4 M.R.S. § 13119-A, and quotes section 13119-A in full. The letter also explains why the Town believes the Study is not a public record pursuant to 1 M.R.S. § 402(3)(B).

Anastos participated in the Brunswick Town Council's review of the credit enhancement agreement application filed by JHR. After his request for

access was denied, Anastos continued to participate and attend public hearings. During a public hearing on the application for the credit enhancement agreement on March 1, 2010, members of the Town Council referred to the feasibility study. In addition to speaking against the credit enhancement agreement, Anastos submitted a letter to the Town Council outlining the reasons for his opposition. The letter discussed occupancy rates in the Brunswick area and it also included an attachment compiled by STR Global, a company that tracks hotels worldwide, setting forth occupancy rates for the Brunswick area, and showing a decrease in occupancy over the prior 12 months to 45% of capacity. During the Town Council's public hearing on JHR's application for a TIF credit enhancement agreement, Eldridge stated that Markovchick had a telephone conversation with JHR's financing bank during which the bank's representative stated that the bank would not finance JHR's proposed inn without the TIF credit enhancement agreement.

According to Anastos, during the Town Council public hearing, two Town Councilors stated that they felt that the Study should not have been confidential and one stated that he would vote against the credit enhancement agreement for that reason. The Town agrees that one Town Councilor thought the information from the Study should have been made public, but according to the Town, the other Town Councilor's statements in the record do not support the conclusion that he thought the Study should have been made public.[4] Additionally, Anastos claims that the first time JHR requested that the Study be

---

[4] The referenced "other Town Councilor" was Councilor Pols. Councilor Pols stated: "He was uncomfortable that the Council gets to read information from the inn feasibility study that cannot be shared. That tipped him over the edge so he cannot support the proposal." Eldridge Aff, Ex. 1, App. A-1, p. 5.

treated as confidential was February 22, 2010, after Anastos had requested access to the document. The Town denies Anastos's assertion, and says JHR always regarded the Study as confidential.

## DISCUSSION

### I.  Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. A contested fact is "material" if it could potentially affect the outcome of the suit under the governing law. *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. A fact is "genuine" if there is sufficient evidence supporting the claimed fact to require a fact-finder to choose between competing versions of facts at trial. *Id.* For the purposes of summary judgment, factual disputes and ambiguities must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 8, 694 A.2d 924, 926.

### II.  Was the Study properly considered confidential by the Town?

In enacting the Freedom of Access Act (FOAA), 1 M.R.S. §§ 401-410, the Maine Legislature declared that in general, public records are to be "open to public inspection." 1 M.R.S. § 401. Section 408 of the Act states: "Except as

8

otherwise provided by statute, every person has the right to inspect and copy any public record . . . ." 1 M.R.S. § 408(1). The Act is to be "liberally construed and applied to promote its underlying purposes and policies." 1 M.R.S. § 401. "A corollary to such liberal construction of the Act is necessarily a strict construction of any exceptions to the required public disclosures." *Guy Gannet Pub. Co. v. Univ. of Maine*, 555 A.2d 470, 471 (Me. 1989). However, just as when interpreting a statute, in FOAA cases the court looks to the language of the statute itself to determine the statute's meaning and the legislative intent. *Davric Maine Corp. v. Maine Dept. of Trans.*, 606 A.2d 201, 202 (Me. 1992).

> Under FOAA "Public Records" include:
>
> any written, printed or graphic material or any mechanical or electronic data compilation from which information can be obtained, directly or after translation into a form susceptible of visual or aural comprehension, that is in the possession or custody of an agency or public official . . . and has been received or prepared for use in connection with the transaction of public or governmental business . . . .

1 M.R.S. § 402(3). There are a few exceptions to the definition of public records under FOAA. *Id.* Among those exceptions, FOAA excludes from the definition of public records those "[r]ecords that have been designated confidential by statute." 1 M.R.S. § 402(3)(A).[5] The burden of demonstrating that a public record

---

[5] FOAA also excludes from the definition of public records those "[r]ecords that would be within the scope of the privilege against discovery or use as evidence recognized by the courts of this States in civil or criminal trials if the records or inspection thereof were sought in the course of a court proceeding." 1 M.R.S. § 402(3)(B). In footnote 2 of the Town's summary judgment motion, the Town claims that in addition to being a proprietary document under 5 M.R.S. § 13119-A(1), the Study is exempt from disclosure based on Rule 507 of the Maine Rules of Evidence and Rule 26 of the Maine Rules of Civil Procedure. However, for this action the Town relies solely on its argument based on 5 M.R.S. § 13119-A(1).

comes within an exception to the general rule of public disclosure is on the political entity denying the FOAA request. *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 13, 769 A.2d 857, 861. In this case, the Town has submitted the Study to the court for *in camera* review permitting the court to evaluate if Anastos's FOAA request for the Study was properly denied. *Springfield Terminal Railway Co. v. Dept. of Trans.*, 2000 ME 126, ¶ 7, 754 A.2d 353, 356.

Title 5 M.R.S. §§ 13119 – 13119-C provides public inspection exceptions for certain confidential records. Section 13119-A(1) provides an exception for records that contain proprietary information. The Town argues that Anastos's FOAA request for the Study was properly denied based on 5 M.R.S. § 13119-A(1). Title 5 M.R.S. § 13119-A provides in relevant part:

> The following records are confidential for purposes of Title 1, section 402, subsection 3, paragraph A and are not open for public inspection:
>
> 1. PROPRIETARY INFORMATION. Information that is provided to or developed by the department or a municipality that has to do with a program of assistance and is included in a business or marketing plan or a grant application or provided or developed to fulfill reporting requirements, as long as:
>     A. The person to whom the information belongs or pertains requests that it be designated as confidential; and
>     B. The department or municipality determines that the information gives the person making the request opportunity to obtain business or competitive advantage over another person who does not have access to that information or will result in loss of business or other significant detriment to the person making the request if access is provided to others . . . .

5 M.R.S. § 13119-A. As explained by the Town, there are four elements that must be satisfied for a document to qualify as confidential proprietary information under 5 M.R.S. § 13119-A(1). The four elements that must be satisfied are:

1. The information that is provided to/developed by the municipality must pertain to a program of assistance;
2. The information is included in a business or marketing plan or a grant application or provided or developed to fulfill reporting requirements;
3. The person to whom the information belongs or pertains requests that it be designated as confidential; and
4. The Town determines that the information gives the person making the request opportunity to obtain business or competitive advantage over another person who does not have access to that information or will result in loss of business or other significant detriment to the person making the request if access is provided to others.

Each of these elements is satisfied.

First, the TIF credit enhancement is program of assistance. Under section 13119, a "program of assistance" means "any financial or technical assistance program established or authorized by the department or a municipality and providing assistance to persons for the improvement and development of housing, community and economic opportunities." 5 M.R.S. § 13119(4). At the Town's request, JHR provided the Study to the Town, so the Town could evaluate JHR's need for a TIF credit enhancement for the inn under the joint development agreement. The Town authorized this financial assistance program through the Development Program, *see supra n. 1*, and it aims to improve and develop housing, community, and economic opportunities.

Second, the Study is part of a business or marketing plan or a grant application developed to fulfill reporting requirements. JHR hired the Pinnacle Advisory Group to complete the Study to evaluate the feasibility of the proposed inn as part of the Project. The Study was commissioned "to assess the market for, and viability of, including a hotel in the [Project]." The Study provides detailed recommendations of how best to position the proposed Inn to capture lodging demand in a defined market area. SMF, ¶ 15. Third, JHR regards the study as

11

confidential and requested that the Town designate the Study as confidential. And fourth, the Town determined that the Study gives JHR the opportunity to obtain business and a competitive advantage, and that disclosing the study would result in a significant detriment to JHR because it could be used by JHR's competitors. For these reasons, the Study qualifies as a confidential record containing proprietary information under section 13119-A(1).

Anastos argues that the Town's finding that the Study contains some confidential information, such that it would qualify as a confidential document containing proprietary information, is not a sufficient reason to deny access to the entire document. Anastos cites section 13119-B and argues that the Town must review the Study and release all portions of those documents that do not fall within the confidentiality exception of section 13119-A(1). Section 13119-B provides:

> Notwithstanding section 13119-A, the department or the municipality shall make available, upon request, to any person reasonably describing the records to which access is sought or, if no request is made, in any manner and at any time that the department or municipality determines appropriate, the following information:
>
> 1. **Certain limited information.** The following must be released after provision of assistance:
>    A. Names of recipients of or applicants for business assistance, including the principals, if applicable;
>    B. Types and general terms of assistance provided to those recipients or requested by those applicants;
>    C. Descriptions of projects and businesses benefiting or to benefit from the assistance provided;
>    D. Number of jobs and the amount of tax revenues projected or resulting in connection with a completed project; and
>    E. Amounts and names of recipients of assistance provided under a program of assistance.
> 2. **Subject to waiver.** Any information pursuant to waiver determined satisfactory by the department must be released.

3. **Available to public.** Information that the department determines has already been made available to the public must be released.
4. **Not otherwise confidential.** Any information not otherwise confidential under section 13119-A or other applicable law must be released.

5 M.R.S. § 13119-B.

The court disagrees with Anastos's argument that the Town is required to excise confidential information and release a redacted version of the Study. The plain language of the statute says that confidential proprietary information is not open for public inspection. 5 M.R.S. § 13119-A(1). Section 13119-B(4) states "[a]ny information not otherwise confidential under section 13119-A or other applicable law must be released." These provisions suggest that once a document is determined to be confidential proprietary information, the entire document becomes unavailable for public inspection. Section 13119-A(1) protects more than trade secrets that could simply be redacted from a "confidential document" before it is released to the public. It does not matter whether the protected information includes trade secrets or readily available public information. Section 13119-A(1) protects the entire work product from public disclosure – it protects the selection, collection, organization and analysis of information from which commercially advantageous business conclusions are drawn.

The legislative history further supports the conclusion that the Study should remain confidential. The statute was introduced as "An Act to Extend Confidentiality Status to Certain Records of Applicants for Housing, Community, or Economic Development Activities." L.D. 1842 (115th Legis. 1991). The statement of facts states:

> This bill protects such [personal financial information], such as tax returns or financial statements, from public disclosure when submitted under a state or local program for housing, community or economic development. *Certain competitive business information is also protected.*

*Id.* Statement of Facts (emphasis added). The bill was proposed and drafted by the Department of Economic and Community Development (DECD). In a letter to the chairpersons of the Joint Standing Committee on Housing and Economic Development, the DECD wrote the following:

> The definition of "trade secrets", which is part of the statute preventing industrial and business espionage, is too narrow when applied to public disclosure. Under trade secret definition, the information must not be readily ascertainable by proper means by other persons. Thus, if a business applied for assistance and submitted a detailed marketing plan which it had paid a consultant to do, that marketing plan would not be a trade secret and would be released to the public, even though its release could be of great benefit of the applicant's competitors, at no cost to them. We believe such circumstances deter applicants from seeking State or municipal assistance, or deter submission of detailed information in applications. The definition in L.D. 1842 would protect that applicant's marketing plan from public release, so long as the applicant requested confidentiality and the state or local agency found that the information either gives its owner a competitive advantage or that release would result in loss of business or other significant detriment.

Letter from M. LaFaver, DECD, to Hon. R. Melendy and Hon. J Brannigan, Chairpersons, Hous. And Econ. Dev. Comm., pp. 1-2 (May 21, 1991). The Study that JHR submitted to the Town is exactly the type of market plan the DECD sought to protect from public disclosure, and the Legislature agreed by enacting the DECD's proposed legislation into law.

From the court's perspective, Anastos simply wants the Study to gain a business advantage at the expense of work that was commissioned by JHR. While Anastos disagrees with providing public assistance for JHR's proposed

14

inn, his arguments supporting public disclosure of the Study overlook the fact that releasing the Study could result in a competitive disadvantage to JHR.

For the reasons set forth above,

The court GRANTS the Town's motion for summary judgment.

Dated at Portland, Maine this _____7ᵗʰ_____ day of _____June_____, 2010.

Robert E. Crowley
Justice, Superior Court

| Date Filed | Action | | Answer Due Date: | | | Docket No. | |
|---|---|---|---|---|---|---|---|
| 03-5-10 | FREEDOM OF ACCESS | | | | | CV-10-96 | ● |
| Scheduling Order Issued: | Discovery Deadline: | Jury ☐ Fee Pd. ☐ Non-Jury ☐ | Statement Filed: Order to File Statement: | Length of Trial: | Rule 16(b) ☐ Rule 16(c) ☐ | Pre Tri Issued: | |

| Plaintiff(s) | Defendant(s) |
|---|---|
| PETER ANASTOS | ✓ TOWN OF BRUNSWICK *Served 3/16/10* |

vs.

| Plaintiff's Attorney(s) | Defendant's Attorney(s) |
|---|---|
| KENNETH M COLE III ESQ NATALIE L BURNS ESQ | *Nicholas Livesay Esq* ⎫ *for Town of Brunswick* *John Croninade, Esq* ⎭ |

| Date | Justice | Action and Comments | Est Time | Not Reached | Cont |
|---|---|---|---|---|---|
| 4/20/10 | *REC* | *Po M for JJ* | | | |
| | | | | | |