2011 ME 41

### Peter ANASTOS

v.

### TOWN OF BRUNSWICK.

Supreme Judicial Court of Maine.

Argued: Feb. 8, 2011.

Decided: March 24, 2011.

Kenneth M. Cole III, Esq., Natalie L. Burns, Esq. (orally), Jensen Baird Gardner & Henry, Portland, ME, for Peter Anastos.

John J. Aromando, Esq. (orally), Nicholas D. Livesay, Esq., Pierce Atwood LLP, Portland, ME, for the Town of Brunswick.

Susanne F. Pilgrim, Esq., Maine Municipal Association, Augusta, ME, for amicus curiae Maine Municipal Association.

Jonathan S. Piper, Esq., Sigmund D. Schutz, Esq., Jonathan G. Mermin, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, ME, for amicus curiae Maine Press Association.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Peter Anastos appeals from the Superior Court's (Cumberland County,

*Crowley, J.*) grant of summary judgment in favor of the Town of Brunswick on his complaint for relief pursuant to the Freedom of Access Act (FOAA), 1 M.R.S. § 409 (2010). Anastos seeks access to a feasibility study that was submitted to the Town by JHR Development of Maine, LLC, pursuant to a joint development agreement, and he now argues that the court erred by affirming the Town's denial of this access because (1) the Town has not demonstrated that the study constitutes proprietary information under the applicable statute, and (2) the entire study is not protected from disclosure even if certain sections are exempt from disclosure requirements.[1] Because we conclude that the court properly applied the relevant exemption to disclosure, *see* 5 M.R.S. § 13119–A (2010), we affirm.

## I. BACKGROUND

[¶ 2] In January 2007, the Town of Brunswick entered into a joint development agreement with JHR to develop a mixed-use project in Brunswick. The project included the construction of a fifty-four-room inn. JHR commissioned a feasibility study of the proposed inn, which was intended to determine the viability of including the inn as a component of the larger project. JHR's manager stated in a meeting with town officials that the study was also developed to evaluate the inn from a business planning perspective and to obtain private financing for the inn.

[¶ 3] JHR sought the Town Council's approval of a tax increment financing (TIF) agreement to help fund the project. To assist in evaluating the need for a TIF, in January 2010 the Town requested a copy of the feasibility study from JHR, which JHR provided. On February 19, 2010, Anastos requested a copy of the study from the Town.[2] The Town considered Anastos's request and conferred with JHR about it, and JHR asked that the study not be publicly disclosed. The Town Director of Finance and Director of Economic and Community Development reviewed the study and discussed it with the Town Manager. The Town decided not to release the study, and the Town's attorney sent Anastos a letter notifying him of the Town's decision. The letter stated that the Town believed that the study was designated confidential by statute, specifically 5 M.R.S. § 13119–A,[3] and was exempt

---

1. Anastos also argues that the Town's attorney did not have the authority to make FOAA decisions on behalf of the Town. Although the Town's attorney sent the letter denying Anastos's request, the record shows that multiple Town officials reviewed the study and met with JHR about its concerns, and the letter reflects that the Town made the determination not to release the study. We therefore find this argument to be without merit and do not discuss it further.

2. Anastos is the principal of a full-service inn in Brunswick.

3. The relevant statutory section provides:
   The following records are confidential for purposes of Title 1, section 402, subsection 3, paragraph A and are not open for public inspection:

1. **Proprietary information.** Information that is provided to or developed by the department or a municipality that has to do with a program of assistance and is included in a business or marketing plan or a grant application or provided or developed to fulfill reporting requirements, as long as:
   **A.** The person to whom the information belongs or pertains requests that it be designated as confidential; and
   **B.** The department or municipality determines that the information gives the person making the request opportunity to obtain business or competitive advantage over another person who does not have access to that information or will result in loss of business or other significant detriment to the person making the request if access is provided to others.
5 M.R.S. § 13119–A(1) (2010).

from disclosure under FOAA.[4] The Town also stated that it believed the study was exempt from disclosure pursuant to 1 M.R.S. § 402(3)(B) (2010) as a trade secret or as confidential commercial information that would be exempt from discovery or introduction as evidence at trial pursuant to M.R. Evid. 507 and M.R. Civ. P. 26.[5]

[¶ 4] Anastos filed a complaint in the Superior Court seeking a judgment requiring the Town to release the feasibility study. The Town filed a copy of the study under seal for the court's review. After reviewing the study, the court granted the Town's motion for summary judgment. The court found that each of the following required elements of section 13119–A(1) was satisfied: (1) the study pertained to a program of assistance; (2) the study was included in a business or marketing plan or was provided or developed to fulfill reporting requirements; (3) JHR requested that the study be designated confidential; and (4) the Town determined that the study gives JHR an opportunity to obtain business or a competitive advantage over a person without access to the study and that disclosing the study would result in significant detriment to JHR. Based on the statutory language and legislative history, the court rejected Anastos's argument that the Town was required to release a redacted version of the study upon determining that only parts of the study were confidential. Anastos timely appealed.

## II. DISCUSSION

### A. The Town's Burden Under FOAA

■ [¶ 5] Anastos argues that the Town has not met its burden of proving that the study falls within an exception to the general rule requiring public disclosure. *See Town of Burlington v. Hosp. Admin. Dist. No. 1,* 2001 ME 59, ¶ 13, 769 A.2d 857, 861 ("The burden of proof is on the agency or political subdivision to establish just and proper cause for the denial of a FOAA request."). We review the construction of a statutory scheme de novo, *see id.* ¶ 12, 769 A.2d at 861, mindful of the Legislature's mandate that FOAA should be liberally construed, 1 M.R.S. § 401 (2010).[6] *See Citizens Commc'ns Co. v. At-*

---

4. The relevant statutory section provides:

> **3. Public records.** The term "public records" means any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained ... that is in the possession or custody of an agency or public official of this State or any of its political subdivisions, or is in the possession or custody of an association, the membership of which is composed exclusively of one or more of any of these entities, and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business, except:
>
> **A.** Records that have been designated confidential by statute.

1 M.R.S. § 402(3)(A) (2010).

5. The Town did not pursue this argument in the summary judgment phase or on this appeal.

6. The statute provides:

> The Legislature finds and declares that public proceedings exist to aid in the conduct of the people's business. It is the intent of the Legislature that their actions be taken openly and that the records of their actions be open to public inspection and their deliberations be conducted openly. It is further the intent of the Legislature that clandestine meetings, conferences or meetings held on private property without proper notice and ample opportunity for attendance by the public not be used to defeat the purposes of this subchapter.
>
> This subchapter shall be liberally construed and applied to promote its underlying purposes and policies as contained in the declaration of legislative intent.

1 M.R.S. § 401 (2010).

*torney Gen.*, 2007 ME 114, ¶ 9, 931 A.2d 503, 505 ("In construing FOAA's statutory provisions, we will consider the underlying public policy and rules of construction expressed by the legislature in 1 M.R.S. § 401."); *Guy Gannett Publ'g Co. v. Univ. of Me.*, 555 A.2d 470, 471 (Me.1989) (holding that a corollary to the liberal construction of FOAA is a strict construction of exceptions to disclosure).

[¶ 6] Anastos asserts that JHR did not request that the study be kept confidential when it submitted the study to the Town, and its "post-hoc characterization" of the study as confidential is insufficient to meet the requirement of section 13119–A(1)(A). The parties agree that JHR told the Town that it considered the study confidential when responding to Anastos's request, and Anastos does not dispute that JHR considered the study confidential when it submitted it to the Town. The plain language of section 13119–A(1)(A) does not require that the party that submits confidential information designate it as confidential at the time of submission. Although it might be prudent to identify a document as confidential when first submitting it to a government agency, JHR's alleged failure to do so does not remove it from the protection of the statute.

[¶ 7] Anastos also argues that the study is not proprietary information because any potential harm to JHR from its disclosure is speculative. However, section 13119–A(1)(B) does not require the Town to have found immediate or concrete detriment to JHR in order to meet its burden of proving that the study falls within the statutory exemption. Further, the Town did determine that releasing the study would harm JHR by disclosing its business strategy and allowing competitors to take business from the inn. If the statute were interpreted to require imminent harm, then a not-yet-constructed pro-ject would rarely qualify for protection, and competitors could use the project's marketing strategies and plans to make it difficult for the new project to survive before it was even completed.

[¶ 8] The Town explained to Anastos that it had made a determination that the study was within the exception provided by section 13119–A(1) and was also excluded from the definition of "public records" because it could not be discovered or introduced at trial. The Town's application of section 13119–A(1) was correct and appropriate.

B. Redaction of the Study

[¶ 9] Anastos argues that even if some parts of the study were properly determined to be confidential pursuant to section 13119–A(1), the entire study should not be exempt from disclosure, and therefore the court erred by not ordering the Town to release a redacted version. We review the construction of a FOAA exception de novo. *See Town of Burlington*, 2001 ME 59, ¶ 12, 769 A.2d at 861. In interpreting a statute, we first consider the plain language and will consider other indicia of legislative intent if the language is silent or ambiguous. *Dyer v. Dyer*, 2010 ME 105, ¶ 7, 5 A.3d 1049, 1051. We are cognizant of the need to balance transparency of government action with the protection of sensitive information as required by section 13119–A(1). Although the public is entitled to review the eligibility of a project for financial assistance, disclosing sensitive information must not disadvantage the project to the extent that it will discourage potential applicants from seeking assistance.

[¶ 10] The Superior Court held that section 13119–A(1) "protects the entire work product from public disclosure—it protects the selection, collection, organization and analysis of information from

which commercially advantageous business conclusions are drawn." After reviewing the study, the court found that it constituted proprietary information because it contains not only specific information, but also an analysis of that information that would be advantageous to JHR's competitors and would disadvantage JHR if released. *See Boyle v. Div. of Cmty. Servs.*, 592 A.2d 489, 491 (Me.1991) *("In camera* review is a routine and appropriate means for judicial review of documents where disclosure is sought."). Even though the study in this case may contain publicly available data, it is the way that this data is incorporated into the study and analyzed that renders the collection of information commercially advantageous.

[¶ 11] Reading the statute as a whole, 5 M.R.S. §§ 13119–A(1) and 13119–B(4)[7] (2010) permit a document that is determined to be proprietary information—not merely to contain proprietary information—to be withheld from public disclosure. Contrary to the Town's argument, the mere existence of some element of proprietary information within a document does not presumptively render the entire document confidential in every instance. However, a document that contains a commercially advantageous collection or analysis of information may be found to be confidential as a whole and thus protected from disclosure pursuant to section 13119–A(1). In a case involving a document such as JHR's feasibility study that consists wholly of proprietary information, redaction is not appropriate.

[¶ 12] While we have previously required documents to be redacted and released, *see, e.g., Guy Gannett Publ'g Co.*, 555 A.2d at 470 (requiring that one protected statement regarding medical infor-

mation be excised from an agreement before disclosure of the agreement), the study at issue in this case cannot be dissected into sensitive and nonsensitive information because the selective inclusion of public and private data, and the analysis of that data, creates a single, integrated work product—a document that constitutes an advantageous business tool for the owner. When such a document contains only protected information, the agency is not required to—and may not—disclose any portion of that document. *See Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 11 n. 4, 754 A.2d 353, 357. JHR's feasibility study is such a document and is thus exempt from disclosure pursuant to section 13119–A(1).

[¶ 13] An examination of the legislative history of section 13119–A reveals that the Legislature was keenly aware of the fact that an exception was being created to FOAA's well-established policy of liberal disclosure in matters concerning government. The Statement of Fact notes that the bill seeks "to balance the need for accountability with the privacy rights of applicants for state or local economic development assistance and to encourage submission of proposals that will benefit the municipality or the state." L.D. 1842, Statement of Fact (115th Legis.1991). It also observed that under previously existing law, municipalities may have been required to disclose "personal financial information" of applicants seeking public development assistance, but the bill "protects such personal information," as well as "[c]ertain competitive business information." *Id.*

[¶ 14] The bill received the support of the Department of Economic and Community Development. In its letter to the

---

7. The relevant statutory section provides:
    **4. Not otherwise confidential.** Any information not otherwise confidential under section 13119–A or other applicable law must be released.
5 M.R.S. § 13119–B(4) (2010).

Housing and Economic Development Committee, the Department detailed a situation similar to JHR's, noting that existing protection for marketing plans was too narrow because a marketing plan would not be a "trade secret," and expressed the Department's belief that "[t]he definition in L.D. 1842 would protect [an] applicant's marketing plan from public release." Letter from Mary Faye LaFaver, Special Assistant to the Commissioner, to Hon. Rita B. Melendy and Hon. Joseph C. Brannigan, Chairpersons, Housing and Economic Development Committee (May 21, 1991). The Department reported that an increasing number of companies were seeking its assistance, but it was difficult to assess the companies' needs, because they were reluctant to provide relevant financial information due to competitive concerns. Testimony of Mary Faye LaFaver, Special Assistant to the Commissioner, before the Housing and Economic Development Committee (May 14, 1991).

[¶ 15] The Economic Development Council of Maine emphasized that it supported the bill as a way to protect "certain business information ... while still providing sufficient information so as to hold ... municipalities accountable for public funds that they received to provide economic development assistance." Letter from Charles G. Roundy, Legislative Committee Chairman, to Hon. Rita B. Melendy and Hon. Joseph C. Brannigan, Chairpersons, Housing and Economic Development Committee (May 21, 1991).

[¶ 16] The cities of Bangor and Portland reported the chilling effect that the prospect of disclosure of proprietary business information can have on municipal development. The City of Portland presented the testimony of the Dean of the School of Business at the University of Southern Maine and Director of the Center for Business and Economic Research. Testimony of Dr. Richard J. Clarey, Dean, Univ. of S. Me. School of Bus., and Dir., Ctr. for Bus. and Econ. Research, before the Housing and Economic Development Committee (May 21, 1991). He opined that "making company-specific financial information available to the public would jeopardize the success of the economic development efforts referred to in the bill." *Id*, He stated that only truly desperate applicants would be willing to "divulge anything to remain afloat," and other applicants might be tempted to present misleading data. *Id.*

[¶ 17] The Legislature was also well apprised of the contrary view. The Maine Daily Newspaper Publishers Association and the Maine Press Association expressed concern that the definition of "proprietary information" did not require that the information be actually secret or otherwise unknown to the public. Letter from Gordon H.S. Scott to Hon. Rita B. Melendy and Hon. Joseph C. Brannigan, Chairpersons, Housing and Economic Development Committee (May 16, 1991). These associations argued that the then-current requirements for disclosure were sufficient until the Legislature further considered the issue. *Id.*

[¶ 18] In enacting L.D. 1842, the Legislature made a measured and informed decision to depart from FOAA's stated purpose in favor of liberal disclosure. The exception created by section 13119–A marks a legislative balancing of equities and a clear intent to stimulate economic development.

[¶ 19] The study in this case is the type of document—a compilation and analysis of information—that was contemplated by the Legislature in creating the protection at issue here. The Legislature extended protection from disclosure to encourage applicants to seek public economic assistance, and releasing this particular study

in a redacted form would frustrate the clearly stated legislative intent.

## III. CONCLUSION

[¶ 20] We have stated that even though the exceptions to FOAA disclosure should be construed narrowly, "when a document objectively viewed describes expressly or by clear implication" information exempted from disclosure, it is properly exempted from public disclosure. *Guy Gannett Publ'g Co.*, 555 A.2d at 471. Because the Town met its burden of proving that the study fell within the scope of protection afforded by section 13119–A(1), summary judgment was properly granted in favor of the Town.

The entry is:

Judgment affirmed.