STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  DOCKET NO. AP-13-05
                                                  TDW- CUM - 6/24/2013

MAINE TODAY MEDIA, INC.,

          Plaintiff

v.                                                ORDER

CITY OF PORTLAND,                                 STATE OF MAINE
                                                  Cumberland ss Clerk's Office

          Defendant                                    JUN 24 2013

                                                       RECEIVED

          Before the court is plaintiff MaineToday Media, Inc.'s appeal from the denial by

the City of Portland of the Portland Press Herald's request under the Freedom of Access

law, 1 M.R.S. §§ 408-A and 409, for a report prepared by Portland's Fire Chief into an

October 15, 2011 incident when a Portland fireboat struck a submerged obstacle in

Portland Harbor.

          Appeals under the Freedom of Access law are heard de novo. 1 M.R.S. § 409(1).

On such an appeal the burden of establishing just cause for the denial of the request

falls upon the municipality or governmental agency seeking to withhold the document

or documents in question. E.g., Town of Burlington v. Hospital Admin. District No. 1,

2001 ME 59 ¶ 13, 769 A.2d 857.

          In this case the parties have submitted the case upon a stipulated factual record,

and the City has submitted the Fire Chief's Report to the court for in camera review.

          The basis of the City's denial in this case is its contention that the Fire Chief's

Report is exempted from disclosure under 30-A M.R.S. § 2702(1), which provides in

pertinent part that certain personnel records are "confidential and . . . are not 'public

records' as defined in [the Freedom of Access law]." Specifically, the City argues that the Fire Chief's Report falls within the following exemption:

> Municipal records pertaining to an identifiable employee and containing the following:
>
> . . . .
>
> (5) Complaints, charges of misconduct, replies to those complaints, charges or accusations <u>and any other information or materials that may result in disciplinary action</u>.

30-A M.R.S. § 2702(1)(B)(5) (emphasis added).

Section 2702(1)(B)(5) goes on to provide that if disciplinary action is taken, the final written decision relating to that action is no longer confidential if the decision upholds discipline. When a disciplinary decision is appealed to arbitration, the final written decision that shall be public is the decision of the arbitrator. <u>Id.</u>

In this case there was an arbitrator's decision which upheld the imposition of discipline upon the two members of the Fire Department who were aboard the fireboat at the time of the incident. The arbitrator reduced the discipline originally imposed to a 48 hour suspension in the case of Captain Christopher Goodall and to a 12 hour suspension in the case of Firefighter Joseph Murphy. That arbitrator's decision has been provided to the Press Herald along with a Coast Guard investigation report about the incident.

The Fire Chief's Report sought by the Press Herald is entitled "Investigatory Findings and Disciplinary Action Report." The initial portion of the report consists of four pages written by Chief Fred LaMontaigne that address whether disciplinary action was warranted, the basis for such disciplinary action, and the disciplinary action taken. Attached to that is a separate portion of the report with a cover page entitled "Investigatory Findings" followed by three pages written by Deputy Chief David Pendleton under the heading "Fireboat Incident of October 15, 2011." The three pages

2

prepared by Deputy Chief Pendleton do not address disciplinary action but simply recite what occurred on October 15, 2011. Attached to the "investigatory findings" prepared by Pendleton is a section entitled "Supporting Documentation" which contains the Coast Guard report and the attachments thereto that have already been made public.

There is no question that most if not all of first four pages of the report (the portion of the report written by Chief LaMontaigne that addresses disciplinary action) would be exempt from disclosure pursuant to 30-A M.R.S. § 2702(1)(B)(5). As a result, the questions to be decided are (1) whether it follows that the entire report is exempt from disclosure; (2) whether the statute allows the redaction of exempt information with the remaining information to be released; and (3) if so, what portions of the report should be released.[1]


### Breadth of § 2702(1)(B)(5) and Whether Redaction May Be Ordered

The City takes the position that because § 2702(1) states that municipal records containing "information or materials that may result in disciplinary action" are not "public records" within the meaning of 1 M.R.S. § 402(3), this case is over. The City also argues, based on the statutory language and on Lewiston Daily Sun v. City of Lewiston, 596 A.2d 619 (Me. 1991), that no redaction may be ordered.

In the court's view, the City is interpreting § 2702(1) too expansively. Since any incident or problem investigated by the City or recorded in the City's files could conceivably result in disciplinary action against a municipal employee, a broad

---

[1] These issues are significant with respect to the public's right of access to municipal records generally. As far as the court can tell, having reviewed the report in camera, there is nothing particularly newsworthy in any of the withheld material nor does that material contain information that adds significantly to what is already in the public record.

interpretation of § 2702 would place any records that might – or might not – reflect employee misconduct, employee negligence, or errors in implementing municipal policy beyond the reach of the Freedom of Access law. This would be antithetical to the purpose of the FOAA. See Blethen Maine Newspapers Inc. v. State, 2005 ME 56 ¶¶ 31-332, 871 A.2d 523 (purpose of FOAA to inform citizens "about what their government is up to" and "to hold the government accountable"). It is also inconsistent with the well-settled principle that FOAA exemptions are to be narrowly construed.

The applicable language in 30-A M.R.S. § 2702(1)(B)(5) is almost identical to the language contained in 5 M.R.S. § 7070(2)(E), the statute applicable to state personnel records, and that Law Court has described the exemption set forth in § 7070(2)(E) as being "narrowly drawn." Guy Gannett Publishing Co. v. University of Maine, 555 A.2d 470, 472 (Me. 1989). As a result, § 2702(1)(B)(5) should be interpreted to exempt only records relating to potential or actual disciplinary action.[2]

That leads to the question of whether such records may be redacted so that non-exempt information may be released. The Law Court has consistently ruled that such redaction is appropriate when necessary to reconcile statutory exemptions with the public interest in disclosure. Blethen Maine Newspapers Inc. v. State, 2005 ME 56 ¶ 38; See Cyr v. Madawaska School Department, 2007 ME 28 ¶ 11, 916 A.2d 967; Bangor Historic Track Inc. v. Department of Agriculture, 2003 ME 140 ¶ 12, 837 A.2d 139; Guy Gannett Publishing Co. v. University of Maine, 555 A.2d at 471-72; Wiggins v. McDevitt, 473 A.2d 420, 424 (Me. 1984).

While the City relies on the Lewiston Daily Sun decision for the proposition that redaction is impermissible in this case, that case is distinguishable. The Lewiston Daily

---

[2] The statutory reference to information or materials that "may" result in disciplinary action is designed to address records relating to potential disciplinary action in situations where disciplinary action is ultimately found to be unwarranted and is not imposed.

4

Sun was seeking the identity of a police officer who had shot a Lewiston resident at a time when the case was still under investigation. No discipline had yet been imposed and if no discipline was ever imposed, the officer's identity would have been expressly exempt from disclosure under § 2702(1)(B)(5). Indeed, if discipline had been imposed and later overturned by an arbitrator, the arbitrator's decision would be public except for the redaction of the employee's name. Id.

As a result, while the Law Court's decision in the Lewiston Daily Sun case rejected "the partial opening" of personnel records urged by the newspaper in that case, 596 A.2d at 621, the partial opening sought in Lewiston Daily Sun would have disclosed the identity of an officer involved in a disciplinary investigation that might have resulted in discipline and that might have found him to be blameless. That is different from this case, where the identities of the employees in question are known and where the report attaches investigatory findings by the Deputy Chief which do not address disciplinary issues.

In this connection, it bears emphasis that in Guy Gannett Publishing Co. v. University of Maine, 555 A.2d at 471-72, the Law Court redacted certain medical information but did not rule that the entire document was exempt from disclosure just because it contained medical information as well as non-exempt information.[3]

---

[3] Like 30-A M.R.S. § 2702(1)(B)(5), the statute at issue in Guy Gannett provided that records "containing" medical information were not "public records" as defined in the FOAA. See 5 M.R.S. § 7070(2)(A). The Law Court's decision to redact the medical information and release the remainder of the document undermines the City's argument that the statutory language of § 2702(1)(B)(5) precludes redaction if some but not all of the information contained in the records would be exempt from disclosure.

5

Non-Exempt Information in This Case

In this case the portion of the report written by Chief LaMontaigne that relates to potential disciplinary action and that constitutes part of Captain Goodall and Firefighter Murphy's personnel records is exempt from disclosure under 30-A M.R.S. § 2702(10(B)(5). This includes all but the final paragraph of the portion of the report authored by Chief LaMontaigne. The final paragraph – which appears under the title "Conclusion" – does not address disciplinary or potential disciplinary action but instead addresses the review of existing policies and the issuance of new policies.

Chief LaMontaigne's portion of the report was based in part upon the facts contained in Deputy Chief Pendleton's three page factual report, which is entitled "Fireboat Incident of October 15, 2011" and attaches as supporting documentation the Coast Guard report and the attachments to that report that have already been made public. Chief LaMontaigne's disciplinary decisions were also based in part on certain facts that are not derived from Deputy Chief Pendleton's report, but those facts are exempt from disclosure under § 2702(1)(B)(5).[4]

In contrast to Chief LaMontaigne's portion of the Report, Deputy Chief Pendleton's three-page report does not address disciplinary action and is limited to a factual investigation of what occurred on October 15, 2011. Just because this document is attached to Chief LaMontaigne's discussion of disciplinary action does not convert its findings into personnel records or make them exempt under § 2702(1)(B)(5). The identities of the employees involved have already been made public. The court therefore orders those pages to be released.

---

[4] The Press Herald argues that information relating to non-employee passengers would not be within the scope of § 2702(1)(B)(5), but those passengers are not identified in either Chief LaMontaigne's or Deputy Chief Pendleton's portion of the report.

6

This is not inconsistent with the Law Court's decision in <u>South Portland Police Patrol Association v. City of South Portland</u>, 2006 ME 55 ¶ 7, 896 A.2d 960. In that case the Law Court upheld a ruling that 30-A M.R.S. § 2702(1)(B)(5) precluded disclosure of an investigatory file that followed a complaint of harassment and discrimination against a specific police supervisor. The complaint did not result in any disciplinary action. The material withheld, as far as the court can tell, was a specific inquiry into alleged employee wrongdoing similar to the first four pages of the report in this case (the portion written by Chief LaMontaigne addressing disciplinary action).

The difference between this case and the <u>South Portland Police Patrol</u> case is that the latter case did not include a separate portion of the report which was not addressed to alleged employee wrongdoing. Notably, in the <u>South Portland Police Patrol</u> case, the trial court had ordered the release of certain portions of the report which were not found to be exempt under § 2702(1)(B)(5), and the City of South Portland did not challenge the release of those portions. <u>See</u> 2006 ME 55 ¶ 4 & n.1.


The entry shall be:

The first four pages of text contained in the report requested by the Portland Press Herald, with the exception of the final paragraph on the fourth page (under the heading "Conclusion") are found to be exempt from disclosure pursuant to 30-A M.R.S. § 2702(1)(B)(5). The final paragraph on page four and the remainder of the report (consisting of three pages of investigatory findings by Deputy Chief Pendleton and the supporting documentation attached to Deputy Chief Pendleton's findings) shall be released.

This order shall be stayed for 21 days from the date it is entered unless within that time either party files a notice of appeal in which case the stay shall remain in effect pending further order of the court.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

7

Dated: June 24, 2013

_____
Thomas D. Warren
Justice, Superior Court

8

Date Filed __1-18-13__ __CUMBERLAND__ Docket No. __AP-13-5__
County

Action __80B APPEAL__

MAINETODAY MEDIA INC                    CITY OF PORTLAND

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| SIGMUND SCHUTZ ESQ<br>PRETI FLAHERTY<br>PO BOX 9546<br>PORTLAND, ME 04112-9546 | DANIELLE WEST-CHUHTA, ESQ.<br>389 CONGRESS STREET<br>PORTLAND, ME 04101 |

Date of
Entry